No. 88-129

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

THOMAS FREDERICK KRANTZ,

       Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        William Boggs argued, Missoula, Montana
        Wendy Holton argued, Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Patti Powell argued, Asst. Atty. General, Helena
        Robert L. Deschamps, III, County Attorney; Fred Van
        Valkenburg, Deputy, Missoula, Montana

Submitted: December 12, 1989

Decided: March 1, 1990

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Thomas Krantz appeals his criminal conviction and sentence for robbery and accountability for robbery following a jury trial in the Fourth Judicial District Court, Missoula County. We affirm.

## ISSUES

1. Did the District Court err in allowing repeated references to a series of similar crimes in the Missoula area after the State agreed at the omnibus hearing not to introduce other crimes evidence?

2. Did the District Court abuse its discretion by failing to provide adequate reasons to justify the sentence and the dangerous offender designation?

3. Did the District Court violate the appellant's due process rights in applying the weapon enhancement statute and the dangerous offender statute?

## FACTS

Near midnight on May 24, 1987, a masked gunman using a rusted chrome or stainless steel pistol held up the Missoula Domino's Pizza. One week later at about 1:30 a.m. on June 2, an armed robber held up the Missoula Orange Street Inn. Near the Inn, responding sheriff's officers spotted a car matching the description of a vehicle seen at a prior robbery. The officers stopped the car and detained the passenger, Greg Jellison, and the driver, appellant Thomas Krantz. A search of the suspects and their car

produced rolls of coins taken from the Orange Street Inn and a chrome-plated, .38 special handgun. Witnesses later identified the appellant as the Domino's Pizza robber.

Between May 19 and June 2, 1987, five other robberies following a common pattern had occurred in the Missoula area. In addition to Domino's Pizza and the Orange Street Inn, Pickle-O-Pete's, the Snow King Restaurant, the Village II, the Campus Inn Motel, and the Executive Motor Inn were also robbed. The State charged Krantz with the Domino's Pizza, Pickle-O-Pete's, and the Snow King robberies and with accountability in the Orange Street Inn holdup.

At the pretrial omnibus hearing, the State agreed not to introduce other crimes evidence. Prior to trial, the State informed the District Court that it would elicit testimony concerning the series of robberies to help explain the actions of police officers and victims. The court held that the testimony did not fall within the definition of other-crimes evidence and, therefore, did not trigger the procedures set out in State v. Just (1979), 184 Mont. 262, 269, 602 P.2d 957, 961. During trial, witnesses and state prosecutors referred repeatedly to the series of robberies without defense objection. The court admonished the jury on several occasions about the limited purposes of such evidence.

The jury found the appellant guilty of accountability in the Orange Street Inn holdup and guilty of robbery in the Domino's Pizza holdup, but not guilty of the robbery of Pickle-O-Pete's and the Snow King Restaurant. The District Court sentenced the appellant to thirty years on each conviction and added ten years to each for use of a weapon. The court ordered the forty-year sentences to run concurrently and designated the appellant a dangerous offender. The defendant now appeals the conviction, sentence enhancement, and dangerous offender designation.

## OTHER CRIMES EVIDENCE

The appellant contends that the State's references during trial to the series of Missoula robberies violated both the substantive and procedural requirementd of <u>Just</u>. We decline to reach this issue because the appellant failed to object to the controverted evidence at any time before or during trial. Failure to object to alleged other crimes evidence precludes consideration of the issue on appeal. State v. Warnick (1982), 202 Mont. 120, 125, 656 P.2d 190, 193.

The appellant cites State v. Brown (1984), 209 Mont. 502, 680 P.2d 582, for the proposition that the appellant's failure to object is not a defense when the omnibus order prohibited the introduction of other crimes evidence. <u>Brown</u> is distinguishable. In <u>Brown</u>, we held that the defendant's motion in limine to exclude evidence of prior acts and the trial court's order requiring ten

4

days notice of such evidence were sufficient to preserve the issue for appeal. Brown, 209 Mont. at 506-07, 680 P.2d at 584-85. Here, the appellant at no time disapproved of the evidence or disagreed with the District Court's finding that it was not other crimes evidence. The record shows that the appellant declined the trial court's offer to instruct the jury on other crimes evidence. The objection requirement prevents the defendant from consciously planting errors in the trial proceedings and then raising those errors as grounds of appeal. State v. Stroud (1984), 210 Mont. 58, 73, 683 P.2d 459, 467. The appellant cannot now complain of prejudice from other crimes evidence when he did not discern any prejudice at trial.

### SENTENCING COURT'S STATEMENT OF REASONS

The appellant argues that in sentencing the District Court failed to consider the presentence report and gave inadequate reasons for the sentence and the dangerous offender designation.

During sentencing the District Court stated,

> [Y]ou have . . . shown a consistent pattern of endangering other people. Therefore, on the basis of your record and the nature of these crimes, I sentence you on each of the two counts to thirty years in the Montana State Prison, ten extra consecutive to those on each of those two counts for the use of a weapon, and designate you a dangerous offender . . . .

The written judgment stated,

> A Pre-sentence Investigation Report was ordered and the Court having received and re-

5

viewed the report and being fully advised as
to the facts of this case . . . .

. . . .

Reasons for the sentence are:
1. Defendant's criminal record;
2. Serious nature of offense; and
3. Consistent pattern of endangering other
people.

The sentencing court is required by statute to state for the record its reasons when imposing sentence. Section 46-18-102(3)(b), MCA. This rule complies with basic fairness by acknowledging the defendant's right to be informed of the reasons for his sentence. It also facilitates review by this Court and the Sentence Review Board. State v. Petroff (Mont. 1988), 757 P.2d 759, 761, 45 St.Rep. 833, 835.

We have generally upheld minimal statements of sentencing reasons. In State v. Petroff we held that, "[t]he recommendations of the Pre-sentence Investigation [and] [t]he Defendant's prior criminal record" provided a sufficient statement. Petroff, 757 P.2d at 761, 45 St.Rep. at 835. In State v. Johnson, we upheld a sentence based on the "[d]efendant's history of alcohol and driving offenses" coupled with the presentence report. Johnson (1986), 221 Mont. 503, 518, 719 P.2d 1248, 1257.

We hold that the District Court's statement of reasons in this case is sufficient. Whether the sentence and dangerous offender status are supported by the presentence investigative report is a

6

question more properly raised before the Sentence Review Division. See Rule 16, Rules of the Sentence Review Division of the Montana Supreme Court.

## CONSTITUTIONALITY OF SENTENCE ENHANCEMENT

### Standing

The State contests the appellant's standing to challenge the constitutionality of the procedure used to enhance his sentence for use of a weapon and to designate him a dangerous offender. To challenge the constitutionality of a criminal statute or procedure, the defendant must show a direct, personal injury resulting from application of the law in question. State v. Bruns (1984), 213 Mont. 372, 380-81, 691 P.2d 817, 822. The State argues that because the appellant's sentence, including enhancement, did not exceed the maximum possible sentences for robbery and accountability, the appellant suffered no injury.

We disagree with the State and hold that the appellant has standing to challenge both the weapon enhancement statute and the dangerous offender statute.[1] The appellant faces direct injury to

---

[1] The State's argument that the appellant gains standing only if his sentence exceeds the maximum potential sentence allowed for the substantive crime, depends on the appellant's contention that his right to due process was violated when the trial court enhanced his sentence beyond that limit without the full panoply of due process procedures. Since we do not accept enhancement beyond the maximum for the underlying crime as establishing a threshold of due process violation, it also does not establish a threshold for injury and, thereby, standing.

his liberty interest. See State v. Nichols (1986), 222 Mont. 71, 78, 720 P.2d 1157, 1162. Under the weapon enhancement statute, he faces ten years in prison in addition to thirty years for the underlying crimes. See § 46-18-221(1), MCA. Under the dangerous offender statute, he will spend up to ten extra years in prison prior to parole eligibility. See § 46-23-201(2), MCA.

Separate Crimes and Elements

The appellant argues that under several United States Supreme Court decisions the Montana statute proscribing use of a weapon in the commission of a crime, § 46-18-221, MCA, and the statute restricting parole eligibility, § 46-18-404 MCA, are distinct crimes separate from the underlying offense or are elements of the underlying offense. As such, the prosecution must charge use of a weapon and dangerous offender status in the information or indictment, they are questions of fact for the jury, and they must be proven beyond a reasonable doubt. The appellant asserts that because the State failed to meet any of these criteria, his enhanced sentence violated the United States constitutional guarantee of trial by jury under the Sixth Amendment and guarantee of due process under the Fourteenth Amendment.

In Specht v. Patterson (1967), 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326, the Supreme Court addressed the due process ramifications of using sentence-enhancement factors in place of elements of a crime. The State of Colorado convicted Specht of

indecent liberties under a statute which carried a maximum penalty of ten years, but sentenced him without further notice or hearing under Colorado's Sex Offenders Act. The Act provided that after reviewing the defendant's psychiatric evaluation the trial court would determine if the defendant was a threat of bodily harm to the public, a habitual offender, or mentally ill. If the court so found, the defendant could be incarcerated for an indeterminate term of one day to life. Specht, 386 U.S. at 607-08, 87 S.Ct. at 1211, 18 L.Ed.2d at 328-29. The Court reversed the sentence holding that because the sentencing procedure required determination of new factual issues under a discrete statute, due process entitled the defendant to full trial procedures on those issues. Specht, 386 U.S. at 609-10, 87 S.Ct. at 1212, 18 L.Ed.2d at 330.

In the case of In re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, the Supreme Court considered the constitutionality of incarcerating a juvenile for larceny under the New York Family Court Act. The Act required that facts of juvenile misbehavior be determined only by a preponderance of the evidence. Winship, 397 U.S. at 360, 90 S.Ct. at 1070, 25 L.Ed.2d at 373. After recounting the history and policy behind the reasonable doubt standard, the Court reversed the case stating,

> Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reason-

able doubt of every fact necessary to con-
stitute the crime with which he is charged.

Winship, 397 U.S. at 364, 90 S.Ct. at 1073, 25 L.Ed.2d at 375.

In Mullaney v. Wilbur (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508, the Supreme Court applied its statement in Winship. Under Maine law proof of an intentional and unlawful homicide raised a conclusive presumption of malice aforethought and, therefore, murder. If, however, the defendant proved by a fair preponderance of the evidence that he committed the homicide in the heat of passion on sudden provocation, the homicide would be reduced to manslaughter. Mullaney, 421 U.S. at 691-92, 95 S.Ct. at 1886, 44 L.Ed.2d at 515. The Supreme Court held that under the principles established in Winship, absence of the heat of passion on sudden provocation was a factual element of murder which the prosecution must prove beyond a reasonable doubt. Mullaney, 421 U.S. at 704, 95 S.Ct. at 1892, 44 L.Ed.2d at 522. The Court noted its principal concern that if it allowed states unfettered discretion to define the elements of a crime,

a State could undermine many of the interests [In re Winship] sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment.

Mullaney, 421 U.S. at 698, 95 S.Ct. at 1889, 44 L.Ed.2d at 519.

In two recent cases, the Supreme Court limited the broad ramifications of Specht, Winship, and Mullaney to give the states greater latitude in defining the elements of a crime and factors mitigating and aggravating sentencing. In Patterson v. New York (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281, the Supreme Court upheld New York's murder statutes which reduced murder to manslaughter if the defendant proved by a preponderance of the evidence the affirmative defense of acting under the influence of extreme emotional disturbance. Patterson, 432 U.S. at 205, 97 S.Ct. at 2324, 53 L.Ed.2d at 289. Apparently recognizing the near impossible burden created by Mullaney, the Court stated that it is not necessary that

> a State must prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of punishment.

Patterson, 432 U.S. at 207, 97 S.Ct. at 2325, 53 L.Ed.2d at 290.

In its most recent decision on the subject, McMillan v. Pennsylvania (1986), 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67, the Supreme Court considered whether the Pennsylvania Mandatory Minimum Sentencing Act withstood due process scrutiny under the Specht-Mullaney-Patterson line of decisions. The Act required the sentencing court to impose at least a five-year minimum sentence for the underlying crime if the court found by a preponderance of

11

the evidence that the defendant had visible possession of a firearm while committing a crime. The Court distinguished Specht and Mullaney in holding that under Patterson, the Pennsylvania Act did not violate due process. McMillan, 477 U.S. at 91, 106 S.Ct. at 2419, 91 L.Ed.2d at 79.

The appellant argues that the present case is controlled by Specht, Winship, and Mullaney. Under these decisions, due process requires that whenever a factual determination could lead to punishment beyond the maximum provided for the underlying crime, that issue must be treated as a separate crime or as an element of a crime. The defendant would be entitled to notice, a hearing, an opportunity to present evidence and confront witnesses, and a requirement that a jury find the fact beyond a reasonable doubt --in other words, a trial on the issue. In the present case, the appellant would be entitled to have the issues of weapon usage and dangerous offender status included as issues during the robbery and accountability trial instead of considered by the court during sentencing.

The appellant distinguishes Patterson and McMillan because the statutes at issue in those cases did not increase the maximum sentence possible for the underlying crime. Like the present appellant, the Specht and Mullaney defendants faced sentences in addition to those imposed for the underlying crimes based on determinations of new issues of fact. In the appellant's inter-

12

pretation, these cases teach that once all facts which would allow a maximum sentence have been proved beyond a reasonable doubt, other factors which increase or decrease the sentence within the maximum may be considered without full due process procedures. They may be affirmative defenses to be proved by the defendant, or they may be sentencing factors to be applied by the court. On the other hand, factors which would increase the sentence beyond the maximum for the underlying crime are separate crimes or elements of a crime subject to full trial procedures.

We do not believe that the Supreme Court intended such a narrow interpretation. The message of Patterson and McMillan is that the decision to designate specified factors as elements of a crime, as affirmative defenses, or as sentencing factors, is fundamentally a decision left to the states. In McMillan the Court restated the basic premise of Patterson:

> It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decisions in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.

13

McMillan, 477 U.S. at 85, 106 S.Ct. at 2415-16, 91 L.Ed.2d at 76 (quoting Patterson, 432 U.S. at 201-02, 97 S.Ct. at 2322, 53 L.Ed.2d at 286-87). (Citations and quotations omitted.) The McMillan Court emphasized that, while due process imposes some limits beyond which the states may not go, application of the reasonable doubt standard has always depended on how state legislatures choose to define a crime. McMillan, 477 U.S. at 85, 106 S.Ct. at 2415, 91 L.Ed.2d at 75.

We do not believe that the system established by the Montana legislature goes beyond the permissible limits. The Supreme Court refused to establish any "bright line" test of those limits, McMillan, 477 U.S. at 86, 106 S.Ct. at 2416, 91 L.Ed.2d at 76, and we decline the appellant's invitation to establish one based on the maximum sentence of the substantive crime. The Court's primary concern in this series of cases is that states would circumvent due process by redefining the essential elements of guilt as affirmative defenses or as sentencing factors.

Montana's weapon enhancement statute and dangerous offender statute do neither. The 1977 Montana Legislature adopted the weapon enhancement statute as part of a bill intended to limit the discretion of sentencing courts by establishing guidelines and minimum mandatory sentences for potentially violent crimes. Consideration of H.B. 261 Before the Senate Judiciary Comm. 45th Leg. (1977) (statement of Rep. Ramirez). Like the Pennsylvania

14

statute challenged in McMillan, the Montana statute simply takes one factor traditionally used in sentencing, the use of a weapon during a crime, and dictates the minimum weight the court must assign. See McMillan, 477 U.S. at 89-90, 106 S.Ct. at 2418, 91 L.Ed.2d at 78-79. Similarly, the 1977 Legislature intended the dangerous offender statute to restrict the discretion of the parole board by limiting the parole eligibility of violent and repeat offenders. Consideration of H.B. 385 Before the House Judiciary Comm. 45th Leg. (1977) (statements of Sen. Thomas and Hank Burgess, Bd. of Pardons). The statute takes a traditional factor in determining parole eligibility, the danger to society, and dictates the precise weight to be assigned. Furthermore, in bills establishing both statutes, the Legislature directed that they be codified in the Revised Codes of Montana at Title 95, Montana Code of Criminal Procedure, Chapter 22, Sentence and Judgment. Act approved April 8, 1977, ch. 340, § 1, 1977 Mont. Laws 1050; Act approved May 13, 1977, ch. 584, § 13, 1977 Mont. Laws 1958, 1964. At that time substantive criminal statutes were codified in Title 94, Crimes and Criminal Procedure, Chapters 1 through 46. The elements of the underlying crime in this case, robbery, have remained essentially the same since territorial times. Compare § 45-5-401, MCA (1989) with Laws of Mont. Ch. VI, § 71 (1879).

The Montana weapon enhancement statute contains a number of elements similar to those found in substantive criminal statutes,

but those elements do not make it a separate crime. The enhancement statute contains a recidivist provision, requires a mental state of knowingly, and may require a finding of fact, use of a weapon, not necessary to establish guilt of the underlying crime. The recidivist provision carries out the statute's purpose by limiting the sentencing court's discretion in imposing increased punishment for repeat offenders. The mens rea requirement protects the defendant by imposing on the court an additional and appropriate finding in determining weapon usage. All sentencing factors may, and often do, require the court to consider facts not established during trial. These elements are as much pertinent and necessary attributes of traditional sentencing considerations as they are attributes of substantive crimes.

The appellant cites cases of the United States Supreme Court and the Circuit Courts of Appeals which have held that the federal weapon enhancement statute and other enhancement-type statutes are separate crimes.[2] The State counters that those cases are based on

---

[2] United States v. Sudduth (10th Cir. 1972), 457 F.2d 1198, 1201 (holding that, although Congressional intent was ambiguous, 18 U.S.C. § 924(c), proscribing use of a weapon during a felony, creates a distinct crime and, therefore, could not be used to enhance a sentence after a substantive charge of weapon usage had been dropped); accord Simpson v. United States (1978), 435 U.S. 6, 10, 98 S.Ct. 909, 911-12, 55 L.Ed.2d 70, 75 (holding that the federal weapon statute cannot be used to increase punishment under the federal bank robbery statute which includes a weapon enhancement provision); see also Garrett v. United States (1985), 471 U.S. 773, 786, 105 S.Ct. 2407, 2415, 85 L.Ed.2d 764, 776 (holding that in passing 21 U.S.C. § 848, proscribing continuing criminal

statutory construction and not due process considerations. The State cites numerous cases in which the federal courts held that enhancement statutes, even when they impose penalties beyond the maximum allowed for the substantive crime, did not create separate crimes and did not violate due process.[3]

While both arguments are persuasive, we do not find either convincing. To paraphrase McMillan, the fact that Montana and the federal government have formulated different statutory schemes to punish armed felons is merely a reflection of our federal system, which demands tolerance for a spectrum of state and federal procedures dealing with a common problem of law enforcement. See McMillan, 477 U.S. at 90, 106 S.Ct. at 2418, 91 L.Ed.2d at 79.

This Court has repeatedly held that Montana's weapon enhancement statute does not create a separate crime or element of a crime. State v. Forsyth (Mont. 1988), 761 P.2d 363, 384, 45 St.Rep. 1577, 1602; State v. Spurlock (1987), 225 Mont. 238, 241, 731 P.2d 1315, 1317; State v. Davison (1980), 188 Mont. 432, 445, 614 P.2d 489, 497. We reaffirm those decisions. The Montana

---

enterprises, Congress intended to create a distinct crime).

[3] See e.g. United States v. Inendino (7th Cir.), 604 F.2d 458, 463 (18 U.S.C. § 3575, dangerous special offender statute), cert. den. 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 190 (1979); United States v. Darby (11th Cir. 1984), 744 F.2d 1508, 1538 (21 U.S.C. § 849, dangerous special drug offender statute) cert. den. sub nom. Yamanis v. United States, 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985); United States v. West (9th Cir. 1987), 826 F.2d 909, 911 (18 U.S.C. § 1202(a), armed career criminal statute).

legislature has chosen a scheme which makes dangerous offender status and use of a weapon sentencing factors. *So* long as that scheme remains constitutional, it is not the province of this Court to transmute these statutory factors into separate crimes or elements of crimes.[4]

### Due Process in Sentencing

The appellant argues that even if the weapon enhancement and dangerous offender designation are not separate crimes, application of those statutes still violate the Fourteenth Amendment because the prosecution failed to give adequate notice by stating in the charging document its intention to seek an enhanced sentence and dangerous offender designation.

Montana recognizes that due process applies to sentencing, but the defendant's liberty interest during sentencing is less than that interest during trial. State v. Nichols (1986), 222 Mont. 71, 76, 720 P.2d 1157, 1161. The process that is due, therefore, is not necessarily as great as that required by the substantive criminal charges. The defendant is entitled to reasonable notice and an opportunity to be heard during sentencing. Oyler v. Boles (1962), 368 U.S. 448, 452, 82 S.Ct. 501, 504, 7 L.Ed.2d 446, 450.

---

[4] The appellant also argues that the Montana weapon enhancement statute creates an aggravated version of robbery and the aggravating element, use of a weapon, must be pled and proved. Having concluded that use of a weapon is a sentencing factor and not an element of a crime, we do not find it necessary to address this argument further.

18

Notice of the sentencing hearing itself provides sufficient notice of potential dangerous offender designation because the statute requires the sentencing court to consider the issue. Nichols, 222 Mont. at 78, 720 P.2d at 1162. As a practical matter, the criminal defendant is always on notice. The State's failure to give more notice in this case did not violate the appellant's due process rights.

Because enhancement of a sentence for the use of a weapon is not an issue in every case, due process requires the State to provide some notice in the charging document, Forsyth, 761 P.2d at 384, 45 St.Rep. at 1602, if the issue is not inherent in the definition of the substantive charges, Davison, 188 Mont. at 446, 614 P.2d at 497. The charge of robbery does not necessarily entail use of a weapon. See § 45-5-401, MCA. The State's failure to allege use of a weapon in the charging document, therefore, was error.

The error, however, was harmless. The State alleged use of a weapon in its affidavit and motion for leave to file information. Furthermore, the record indicates that the prosecution repeatedly elicited testimony that the appellant and his accomplice used a handgun during the robberies and the weapon enhancement statute requires the sentencing court to impose an additional minimum sentence when a weapon is used. The appellant had actual notice

that use of a weapon would be a consideration during sentencing. See State v. Madera (1983), 206 Mont. 140, 152, 670 P.2d 552, 558.

We conclude that the sentence imposed by the trial court did not violate the appellant's right to due process.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____

_____

_____

_____
Justices

20

Justice John C. Sheehy, concurring and dissenting:

A general definition of crime is a union of act and mental state banned by the law. In Montana, mental state is found in the use of the adverbs "knowingly" and "purposely." However, the legislature may define an act as a crime without requiring mental state. When that is done, the banned act is one that brings on absolute liability. The Montana statute states:

> 45-2-104. Absolute liability. A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in subsection (33) [knowingly], (37) [negligently], and (58) [purposely] of 45-2-101 only if the offense is punishable by a fine not exceeding $500 or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described. (Emphasis added.)

In this case, the penalty for using a gun imposes a jail term. The question whether the legislature intended to impose absolute liability for the use of a gun in committing a felony must be found in the statute defining the gun penalty. It must clearly indicate a legislative purpose to impose absolute liability for the conduct described.

It cannot be found in this case that the legislature intended to impose absolute liability for the use of a gun in committing a felony because it interposed the mental state word "knowingly" in its definition of the act. The statute states:

> 46-18-221. Additional sentence for offenses committed with a dangerous weapon. (1) A person who has been found guilty of any offense and who, while engaged in the commission of the offense, knowingly displayed,

21

brandished, or otherwise used a firearm . . . or other dangerous weapon shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years nor more than 10 years . . .

. . .

(4) An additional sentence prescribed by this section shall run consecutively to the sentence provided for the offense. (Emphasis added.)

In this case, who found that Krantz acted "knowingly" in using a firearm to commit a felony? Certainly the jury did not, because the use of a firearm was not alleged in the charging information, nor was it contained in the instructions of the court. The court itself, at the time of sentencing, made no reference to whether Krantz acted "knowingly" in brandishing the firearm.

The crime of robbery in Montana can be proved by the state without a showing that a dangerous weapon was used. The statute provides:

45-5-401. Robbery. (1) A person commits the offense of robbery if in the course of committing a theft he:

(a) inflicts bodily injury upon another;

(b) threatens to inflict bodily injury upon any person or purposely or knowingly puts any person in fear of immediate bodily injury; or

(c) commits or threatens immediately to commit any felony other than theft.

The penalty for committing the offense of robbery is a state prison term of not less than two years nor more than 40 years and a fine of not more than $50,000. Section 45-5-401, MCA.

22

Thus, the use of a dangerous weapon in the commission of a robbery is an aggravating factor, for which an additional penalty may be imposed under § 46-18-221, MCA.

In Jordan v. U.S. Circuit Court for the District of Columbia (D.C. Cir. 1956), 233 F.2d 362, 367 (vacated on other grounds 352 U.S. 904 (1956)) where defendant had been convicted of assault with intent to commit robbery and was given an additional five year term of imprisonment under a statute allowing such where the crime was committed with a pistol or firearm, the court vacated the additional sentence stating:

> . . . where the aggravation arises from the manner which the crime was committed, in substance a different aspect of the offense is sought to be punished. Accordingly, we think . . . that the facts in aggravation must be charged in the indictment and found to be true by the jury.

If the legislature had merely provided that the use of a gun in the commission of a felony would automatically lead to the increased penalty, there would be no problem here. However, the legislature inserted the word "knowingly," as an element in the use of the gun. This element requires a fact-finding, and a fact-finding can only be done in criminal cases by a jury. In effect, the use of a gun is a separate offense, for which every element must be proved beyond a reasonable doubt. In Re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. Because of the insertion of the word "knowingly," we should in effect overrule State v. Madera (1983), 206 Mont. 140, 670 P.2d 552; State v. Davidson (1980), 188 Mont. 432, 614 P.2d 489; and not regard the

holding by the Court of Appeals for the Ninth Circuit in LaMere v. Risley (9th Cir. 1987), 827 F.2d 622.

There is an additional factor why we should require fact-finding by the jury with respect to the use of a firearm. There is a recidivist provision in § 46-18-221, MCA, as follows:

. . .

(2) A person convicted of a second or subsequent offense under this section shall, in addition to the punishment provided for the commission of the present offense, be sentenced to a term of imprisonment in the state prison of not less than 4 years or more than 20 years, except as provided in 46-18-222. For the purpose of this subsection, the following persons shall be considered to have been convicted of a previous offense under this section:

(a) a person who has previously been convicted of an offense, committed on a different occasion than the present offense, under 18 U.S.C. 924(c); and

(b) a person who has previously been convicted of an offense in this or another state, committed on a different occasion than the present offense, during the commission of which he knowingly displayed, brandished, or otherwise used a firearm, destructive device, as defined in 45-8-332(1), or other dangerous weapon.

(3) The imposition or execution of the minimum sentence prescribed by this section may not be deferred or suspended, except as provided in 46-18-222.

(4) An additional sentence prescribed by this section shall run consecutively to the sentence provided for the offense.

The following factors, therefore, should require us to find that gun-toting in the commission of a crime is a separate issue or offense which must be charged in the information and found by the jury:

(1) The forbidden act of brandishing a firearm.

24

(2)  The forbidden act done knowingly.

(3)  The punishment being separate and mandatory.

(4)  Additional penalties for recidivism.

I would, therefore, affirm the conviction of Krantz for the felony offense but reverse the enhancement of his sentence that relates to the use of a firearm for the reason that the separate offense was not separately charged and found by the jury.  There are Due Process and Sixth Amendment implications here not met in our statute.

_John C. Sheehy_
Justice

Justice William E. Hunt, Sr., concurring and dissenting:

I concur with Justice Sheehy.

_William E. Hunt, Sr._
Justice

25