Dan NICHOLS, Petitioner,

v.

Jack McCORMICK, Warden, Respondent.

No. CV–89–028–BU.

United States District Court, D. Montana, Butte Division.

May 4, 1990.

Wendy Holton, Helena, Mont., for petitioner.

Marc Racicot, Atty. Gen., Elizabeth S. Baker, Asst. U.S. Atty., Helena, Mont., for respondent.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

The petitioner, Dan Nichols, challenges the judgment of conviction entered against him upon a trial by jury in the District Court of the Fifth Judicial District of the State of Montana for the criminal offenses of kidnapping and misdemeanor assault. *See State v. Nichols*, 222 Mont. 71, 720 P.2d 1157 (1986). Nichols was sentenced to a term of imprisonment of twenty years and six months; a period comprised of a ten-year term for the kidnapping conviction, a six-month term for the misdemeanor assault conviction and a ten-year term, pursuant to the Montana sentence enhancement statute, Mont.Code Ann. § 46–18–221 (1985), for use of a weapon while engaged in the commission of felony kidnapping. 720 P.2d at 1158. Nichols instituted the present action for habeas corpus relief pursuant to 28 U.S.C. § 2254, challenging the constitutional validity of the ten-year sentence imposed upon him under the weapon enhancement statute.[1]

It is undisputed the charging document, an information, filed by the State, did not charge Nichols with a violation of Mont. Code Ann. § 46–18–221. Nonetheless, the sentencing court utilized Mont.Code Ann. § 46–18–221 to "enhance" Nichols' sentence of incarceration by ten years. Nichols' petition places in issue the constitutionality of Montana's weapon enhancement statute, Mont.Code Ann. § 46–18–221 (1985), on its face and as applied to Nichols. Nichols contends the trial court's enhancement of his sentence, pursuant to section 46–18–221, served to deprive him of his right to due process of law, his right to know the nature and cause of the criminal accusation against him, and his right to a jury determination on the elements of the crime, in violation of the sixth and fourteenth amendments.[2]

### I.

Montana's weapon enhancement statute provides that anyone convicted of any offense shall, "in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment of not less than two years or more than ten years" if "while engaged in the commission of the offense" the defendant is found to have "knowingly displayed, brandished, or otherwise used a firearm." Mont.Code Ann. § 46–18–221.[3] The Mon-

---

1. The respondent seeks dismissal of the petition upon the ground Nichols is procedurally barred from raising the subject claims in federal habeas proceedings. *See, Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Review of proceedings in the Montana Supreme Court upon Nichols' petition for post-conviction relief, wherein Nichols asserted the identical claims, convinces the court the present situation falls within the purview of the rule announced in *Huffman v. Ricketts,* 750 F.2d 798, 800 (9th Cir.1984). The State contends the Montana Supreme Court did not address the merits of Nichols' claims. The order of the Montana Supreme Court denying Nichols' petition is somewhat ambiguous. However, cognizant of the fact the default rule enunciated in *Sykes* is a rule based upon comity, the balance must be struck in favor of allowing Nichols to have his claim resolved upon the merits.

2. Nichols' petition was referred to the United States Magistrate for the District of Montana for

recommended disposition in accordance with 28 U.S.C. § 636. The Magistrate filed his report with the court on January 4, 1990, recommending dismissal of the petition. The court reviews the objections to the report *de novo*.

3. Mont.Code Ann. § 46–18–221 (1985) provides in full:
 **Additional sentence for offenses committed with a dangerous weapon.** (1) A person who has been found guilty of any offense and who, while engaged in the commission of the offense, knowingly displayed, brandished, or otherwise used a firearm, destructive device, as defined in 45–8–332(1), or other dangerous weapon shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years, except as provided in 46–18–222.
 (2) A person convicted of a second or subsequent offense under this section shall, in addition to the punishment provided for the

tana Supreme Court has expressly held the enhancement statute does not create a separate, substantive offense, but only "provide[s] for an enhanced penalty once the defendant has been found guilty of an underlying offense." *State v. Davison*, 188 Mont. 432, 614 P.2d 489, 496–97 (1980). A review of the more recent Montana decisional law evinces the continued vitality of the holding in *Davison*. *See, State v. Krantz*, —— Mont. ——, 788 P.2d 298 47 St.Rptr. 454 (1990); *State v. Forsyth*, 233 Mont. 389, 761 P.2d 363 (1988); *State v. Spurlock*, 225 Mont. 238, 731 P.2d 1315 (1987).

The gravamen of Nichols' position lies in his assertion that Mont.Code Ann. § 46–18–221 creates a separate offense calling for a separate penalty, as opposed to merely operating to limit the sentencing court's discretion by prescribing a mandatory minimum sentence. This precise characterization of the weapon enhancement statute was rejected by the Montana Supreme Court in *Krantz*. The appellant in *Krantz* argued the weapon enhancement statute creates a distinct crime separate from the underlying offense. 788 P.2d at 301, 47 St.Rptr. at 454. Accordingly, Krantz contended due process of law required that a violation of the statute must be set forth in the charging instrument and submitted to the jury for a determination of all pertinent facts beyond a reasonable doubt. Krantz, as does Nichols in the case at bar, asserted the imposition of a sentence pursuant to the weapon enhancement statute, when a violation of the statute was not charged, constituted a violation of both his right to trial by jury and due process of law. The obvious thrust of Krantz' argu-

ment was that the possession of a firearm is an element of the crime for which he was being sentenced and, accordingly, is a question of fact which must be proved beyond a reasonable doubt.

After reviewing the United States Supreme Court decisions it deemed pertinent to the issues presented, *i.e., Sprecht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the *Krantz* court reasoned the "primary concern in these series of cases was that states would circumvent due process by redefining the essential elements of guilt as affirmative defenses or as sentencing factors." 788 P.2d at 304, 47 St.Rptr. at 461. The court concluded Montana's weapon enhancement statute did not go beyond the "permissible limits" of the Due Process Clause because it had neither effect. *Id.* Rather, the court, cognizant of the fact the enhancement statute was part of a statutory scheme designed to limit the discretion of sentencing courts by establishing guidelines and minimum mandatory sentences, concluded the statute simply "takes one factor traditionally used in sentencing, the use of a weapon during a crime, and dictates the minimum weight the court must assign." 788 P.2d at 304, 47 St.Rptr. at 461. The court rejected the proposition that once an enhancement statute allows imposition of a sentence which exceeds the maximum sentence prescribed for the underlying substantive offense, the

commission of the present offense, be sentenced to a term of imprisonment in the state prison of not less than 4 years or more than 20 years, except as provided in 46–18–222. For the purposes of this subsection, the following persons shall be considered to have been convicted of a previous offense under this section:

(a) a person who has previously been convicted of an offense, committed on a different occasion than the present offense, under 18 U.S.C. 924(c); and

(b) a person who has previously been convicted of an offense in this or another state,

committed on a different occasion than the present offense, during the commission of which he knowingly displayed, brandished, or otherwise used a firearm, destructive device, as defined in 45–8–332(1), or other dangerous weapon.

(3) The imposition or execution of the minimum sentences prescribed by this section may not be deferred or suspended, except as provided in 46–18–222.

(4) An additional sentence prescribed by this section shall run consecutively to the sentence provided for the offense.

statute must be considered as creating a separate substantive offense with respect to which the accused is entitled to his full panoply of constitutional rights. 788 P.2d at 303–304, 47 St.Rptr. at 460–461. In rejecting this position, the Montana Supreme Court concluded "[t]he message of *Patterson* and *McMillan* is that the decision to designate specified factors as elements of a crime, as affirmative defenses, or as sentencing factors, is fundamentally a decision left to the states." 788 P.2d at 303, 47 St.Rptr. at 460.

The linchpin of the *Krantz* decision lies in the court's conclusion that the use of a weapon, although a finding of fact essential to imposition of a penalty under the weapon enhancement statute, is not an element essential to the finding of guilt of the underlying crime. 788 P.2d 298, 47 St. Rptr. 454. *Ergo,* the court reasoned, the enhancement statute does not exceed the state's authority to pursue its fundamental right of defining the crime and prescribing punishment. 788 P.2d at 303–05, 47 St. Rptr. at 460–61. The court stated its belief the "system" established by the Montana Legislature for enhancement of penalty in crimes involving the use of a weapon does not circumvent due process of law by "redefining the essential elements of guilt as affirmative defenses or as sentencing factors." 788 P.2d 298, 47 St.Rptr. 454.

A recapitulation of the Montana Supreme Court's interpretation of the weapon enhancement statute is a prerequisite to this court's assessment of the validity of the present petition for habeas relief, since this court is bound by the Montana Supreme Court's interpretation of Montana law. *See, Townzen v. Craven,* 444 F.2d 315, 316 (9th Cir.1971). Cognizant of the Montana Supreme Court's holding that the weapon

enhancement statute does not create a separate substantive offense but merely sets forth a legitimate factor to be considered by a trial court in imposing sentence, this court turns to address the constitutional validity of the Montana weapon enhancement statute and the application of that statute to Nichols.[4]

## II.

 The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. at 364, 90 S.Ct. at 1073. In striking a balance between the state's power to regulate procedures under which its laws are carried out, and the right of an accused to due process of law, the Supreme Court has declared that the Due Process Clause "requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977). There are, however, obvious constitutional limits beyond which the states may not go in establishing the elements of a crime and the allocation of burden of proof with respect to each of those elements. *Patterson,* 432 U.S. at 210, 97 S.Ct. at 2327. Due process of law does require that a State must prove every ingredient of an offense beyond a reasonable doubt, and does not allow the State to shift the burden of proof to the defendant by presuming a necessary ingredient upon proof of the other elements of the offense. *Patterson,* 432 U.S. at 215, 97 S.Ct. at 2329–30 (*citing, Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)).[5]

---

**4.** The constitutional validity of the Montana weapon enhancement statute passed scrutiny under the Due Process Clause in *LaMere v. Risley,* 827 F.2d 622 (9th Cir.1987) (defendant not deprived of due process by application of Mont.Code Ann. § 46–18–221 although information did not charge violation). The validity of the statute is appropriately reassessed in light of *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir. 1988), *Appeal docketed,* No. 88–1553 (U.S. March 20, 1989).

**5.** In *Patterson,* the Court upheld that aspect of the State of New York's murder statutes which allowed for reduction of a murder conviction to manslaughter upon affirmative proof by the defendant, beyond a reasonable doubt, that he was acting under the influence of extreme emotional distress. 432 U.S. at 205, 97 S.Ct. at 2324.

The Court in *Patterson* rejected the suggestion that its holding in *Mullaney* should be broadly read to mean that a "State may not permit the blameworthiness of an act or the severity of the punishment authorized for its commission to depend on the presence or absence of an identified fact without assuming the burden of proving the presence or absence of that fact, as the case may be, beyond a reasonable doubt." 432 U.S. at 214, 97 S.Ct. at 2329. The Court proceeded to state:

> *Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense.... Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause.

432 U.S. at 215, 97 S.Ct. at 2329.[6]

■ The Supreme Court's most recent pronouncement regarding the interplay between the Due Process Clause, as interpreted in *In re Winship*, *Mullaney* and *Patterson*, and the right of the several states to define and punish criminal conduct came in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411. Under constitutional challenge in *McMillan* was Pennsylvania's mandatory minimum sentencing act, 42 Pa.Cons.Stat. § 9712 (1982), which provides, *inter alia*, that anyone convicted of certain enumerated felonies is subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge finds, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense. 477 U.S. at 81, 106 S.Ct. at 2413.[7] The petitioner in *McMillan* argued that under the Due Process Clause, as interpreted in *Winship* and *Mullaney*, if a State wants to punish visible possession of a firearm it must undertake the burden of proving that fact beyond a reasonable doubt. 477 U.S. at 84, 106 S.Ct. at 2415. The Court, however, rejected the petitioner's argument, concluding that "States may treat 'visible possession of a firearm' as a sentencing consideration rather than an element of a particular offense." 477 U.S. at 91, 106 S.Ct. at 2419. The Court found the issue presented to have been controlled by its holding in *Patterson*. 477 U.S. at 85, 106 S.Ct. at 2415–16.

The Court in *McMillan* began its analysis, as it did in *Patterson*, rejecting the suggestion that whenever a State links the "severity of punishment to the presence or absence of an identified fact" the State must prove that fact beyond a reasonable doubt. 477 U.S. at 84, 106 S.Ct. at 2415 (citation omitted). While acknowledging the existence of constitutional limits beyond which the States may not go in defining the elements of a criminal offense, the Court stated: "*Patterson* stressed that in determining what facts must be proved beyond a reasonable doubt, the State Legislature's definition of the elements of the

**6.** A re-visitation to *Mullaney* is appropriate. There the Court held the Due Process Clause "requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." 421 U.S. at 704, 95 S.Ct. at 1892. The criminal statute invalidated in *Mullaney, i.e.,* the State of Maine's murder statute, included malice as part of the definition of murder. Under the statute, a person accused of murder could rebut the statutory presumption that he committed the offense with "malice aforethought" by proving that he acted in the heat of passion on sudden provocation. The Court held the scheme improperly shifted the burden of proof from the State to the defendant in contravention of the Due Process Clause as construed in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368

(1970). 421 U.S. at 703–04, 95 S.Ct. at 1892. The Court expressly rejected the notion that *Winship* is limited to those facts that constitute a crime as defined by state law. 421 U.S. at 698, 95 S.Ct. at 1889.

**7.** The pertinent provisions of the Pennsylvania act direct the trial judge to consider, at the time of sentencing, the evidence introduced at trial and any additional evidence offered by either the defendant or the State. The act operates to divest the judge of discretion to impose any sentence of less than five years for the underlying felony, but it does not authorize a sentence in excess of that otherwise allowed for the underlying offense. 477 U.S. at 82, 106 S.Ct. at 2414.

offense is usually dispositive...." 477 U.S. at 85, 106 S.Ct. at 2415. The Court did not see the Pennsylvania act as creating the sort of presumption of guilt condemned in *Patterson* (*citing, McFarlane v. American Sugar Refining Co.*, 241 U.S. 79, 36 S.Ct. 498, 60 L.Ed. 899 (1916); *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943)). 477 U.S. at 87, 106 S.Ct. at 2416–17. Nor did the Act, the Court concluded, operate to relieve the prosecution of its burden of proving guilt, but under its express terms, becomes applicable only after defendant has been duly convicted of a crime for which he is to be punished. *Id.*

Critical to the rationale expressed in *McMillan*, was the fact the enhancement statute "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." 477 U.S. at 88, 106 S.Ct. at 2417.[8] The Court emphasized that the Pennsylvania Legislature, in its passage of the Act, did not change the definition of any existing offense but simply took one factor which has traditionally been considered by sentencing courts to bear on punishment, *i.e.*, the instrumentality used in committing a violent felony, and dictated the precise weight to be given that factor if the instrumentality is a firearm. 477 U.S. at 89–90, 106 S.Ct. at 2417–18. While the Court sustained the constitutional validity of Pennsylvania's mandatory minimum sentencing act, the Court quickly cautioned that it was not attempting to lay down any "bright line" test, leaving the constitutionality of similar statutes to depend on "differences of degree". 477 U.S. at 91, 106 S.Ct. at 2419.[9]

The *McMillan* Court's broad statement that "[s]tates may treat 'visible possession of a firearm' as a sentencing consideration rather than an element of a particular offense ...", the State of Montana submits, is dispositive of Nichols' claim. The State, of course, views it to be entirely within the prerogative of the several states to determine whether a particular factor is to be deemed a sentencing consideration as opposed to an element of a particular offense. It is urged by Nichols, however, that *McMillan* may be distinguished since Pennsylvania's mandatory minimum sentencing act serves only to limit the sentencing judge's discretion, and unlike Montana's weapon enhancement statute, does not operate to increase the maximum penalty permitted for the underlying offense. This distinction, Nichols urges, compels the conclusion the particular factor which brings the enhancement statute into play, *i.e.*, knowing possession of a weapon, must be charged and proved beyond a reasonable

---

**8.** The *McMillan* Court expressly recognized that the petitioner's claim "that visible possession under the Pennsylvania statute is 'really' an element of the offense for which they are being punished—that Pennsylvania has in effect defined a new set of upgraded felonies—would have at least more superficial appeal if the finding of visible possession exposed them to greater or additional punishment...." 477 U.S. at 88, 106 S.Ct. at 2417. The Court chose not to elaborate.

**9.** The five-four majority opinion was the subject of a spirited dissent from Justice Stevens. 477 U.S. at 95–104, 106 S.Ct. at 2421–25. Concerned that the importance of the reasonable doubt standard, and the Constitution itself, would be demeaned if the substance of the standard could be avoided by nothing more than a legislative declaration that prohibited conduct is not an "element" of a crime, Justice Stevens stated:

"Appropriate respect for the rule of *In re Winship* requires that there be some constitutional limits on the power of a state to define the elements of criminal offenses. The high standard of proof is required because of the immense importance of the individual interest in avoiding both the loss of liberty and the stigma that results from a criminal conviction. It follows, I submit, if a State provides that a specific component of a prohibited transaction shall give rise both to a special stigma and to a special punishment, that component must be treated as a 'fact necessary to constitute the crime' within the meaning of our holding in *In re Winship*."
477 U.S. at 103, 106 S.Ct. at 2425. In his opinion, "[n]othing in *Patterson* or any of its predecessors authorizes a State to decide for itself which of the ingredients of the prohibited transaction are 'elements' that it must prove beyond a reasonable doubt at trial." 477 U.S. at 98, 106 S.Ct. at 2422.

doubt. Nichols implores the court to recognize that the Montana weapon enhancement statute serves, in effect, to define a set of "aggravated" felonies.

The difference between Montana's weapon enhancement statute and Pennsylvania's mandatory minimum sentencing act, challenged in *McMillan,* is obvious. Montana's statute operates to alter the maximum penalty for the crime committed, as opposed to simply limiting the sentencing court's discretion. The statute increases the maximum penalties, as otherwise prescribed for all felonies, by ten years. The court must decide whether this statutory scheme comports with the due process requirement, as defined in *In re Winship,* that the prosecution prove beyond a reasonable doubt "every fact necessary to constitute the crime charged." *In re Winship,* 397 U.S. at 364, 90 S.Ct. at 1073.

The *McMillan* Court expressly recognized that states "may treat 'visible possession of a firearm' as a sentencing consideration rather than an element of a particular offense...." 477 U.S. at 91, 106 S.Ct. at 2419. Although the Court suggested that a statutory scheme like Montana's, which serves to create a set of "upgraded felonies" might be subjected to closer scrutiny, the Court stopped short of reaching this conclusion. 477 U.S. at 88, 106 S.Ct. at 2417. The Court further viewed as insignificant to due process analysis, the fact some states have chosen to make possession of a weapon an element of various aggravated offenses: "[t]he fact that the States have formulated different statutory schemes to punish armed felons is merely a reflection of our federal system which demands '[t]olerance for a spectrum of State procedures dealing with a common problem of law enforcement.' *Spencer v. Texas,* 385 U.S. 554, 566 [87 S.Ct. 648, 655, 17

L.Ed.2d 606] (1967)." 477 U.S. at 90, 106 S.Ct. at 2418. Contrary to the assertion of Nichols, the fact the Montana scheme operates to increase the sentencing range for felonies, as opposed to merely limiting the sentencing court's discretion, does not compel the conclusion the statute contravenes the Due Process Clause under the rationale of *McMillan.*

The Court in *McMillan,* as it had in *Patterson,* rejected the claim that "whenever a State links the 'severity of punishment' to the 'presence or absence of an identified fact', the State must prove that fact beyond a reasonable doubt." 477 U.S. at 84, 106 S.Ct. at 2415 (citation omitted). This major premise established, the Court proceeded to develop an analytical framework for determining what facts constitute the elements of an offense and, accordingly, must be proved beyond a reasonable doubt. First, all the elements included in the definition of the offense, as established by state law, must be proven beyond a reasonable doubt. 477 U.S. at 85, 106 S.Ct. at 2415. Second, the definition adopted by a state cannot be designed to "evade" the commands of *Winship.* 477 U.S. at 89, 106 S.Ct. at 2418. The latter inquiry, of course, entails an analysis which proceeds beyond the face of the challenged statute to a determination of whether the reasonable-doubt requirement "applies to facts not formally identified as elements of the offense charged." 477 U.S. at 86, 106 S.Ct. at 2416.[10]

The decision of the Montana Supreme Court in *Krantz* establishes the Montana statutory plan was not intended by the Legislature to make possession of a weapon an element of the underlying offense, in Nichols' case kidnapping, which must be proved beyond a reasonable doubt. 788

**10.** Although framed by the *McMillan* court as two distinct inquiries, it would seem, as a practical matter, the inquiries meld into one, *i.e.,* whether the identified fact which bears upon the severity of punishment is one which due process of law requires to be proven beyond a reasonable doubt. The state legislature defines the offense that is charged in any given case. A federal habeas court in turn is bound by state court interpretations of that statute. *Townzen v. Craven,* 444 F.2d 315, 316 (9th Cir.1971). In view of the exhaustion requirement attendant habeas proceedings under 28 U.S.C. § 2254, the challenged statute will, in most instances, as in the case at bar, have withstood constitutional challenge in the state courts. *See,* 28 U.S.C. § 2254(b).

P.2d at 304–05, 47 St.Rptr. at 461–62.[11] Under the relevant state law the identified fact, *i.e.*, possession of a weapon, is not essential to establish criminality in the first instance. 788 P.2d at 304, 47 St.Rptr. at 461. Thus, the issue presented reduces to whether, under a due process analysis, possession of a firearm constituted a fact necessary to constitute the crime for which Nichols was convicted. *See, In re Winship*, 397 U.S. at 364, 90 S.Ct. at 1072–73.[12]

The Montana enhancement scheme goes one step beyond the Pennsylvania scheme scrutinized by the Court in *McMillan*, linking the available range of sentence to the existence of an identified fact. As noted, Nichols urges this distinction results in Montana's scheme exceeding the constitutional limit envisioned, yet not precisely defined, by the Court in *Patterson* and *McMillan*. *See McMillan*, 477 U.S. at 86, 106 S.Ct. at 2416; *cf., Adamson v. Ricketts*, 865 F.2d 1011, 1024 (9th Cir.1988). The court disagrees.

Support for Nichols' position is arguably provided by the Ninth Circuit Court of Appeals' decision in *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988). Under constitutional scrutiny by the *en banc* court in *Adamson* was Arizona's death penalty statute, Ariz.Stat. § 13–703. Section 13–703 delegated the responsibility for deciding whether a defendant would receive a life sentence or death to the judge who presided over a separate, statutorily mandated, aggravation-mitigation hearing. 865 F.2d at 1024–1025. Adamson challenged this statutory scheme as violative of the Due Process Clause of the fourteenth amendment, contending the scheme operat-

ed to deprive him of his fundamental right to a jury trial. 865 F.2d at 1025.

Upon examination of the scheme, the *Adamson* court concluded the "aggravating circumstances", the existence of which were essential to imposition of the death penalty, are "additional *elements* necessary for finding that a defendant is guilty of the distinctive offense of *capital* murder." 865 F.2d at 1025–1026 (emphasis in original). The court viewed as compelling the fact the "aggravating circumstance", with its attendant burden of proof, *i.e.*, beyond a reasonable doubt, mirrored "the attributes of an essential element of the offense during the guilt phase of a trial." 865 F.2d at 1026. Likewise, the subjective inquiry into the defendant's state of mind which the statutory scheme required, entailed a factual assessment traditionally within the jury's domain of decision. 865 F.2d at 1026–1027.[13]

The *Adamson* court found *McMillan* provided additional support for its conclusion. 865 F.2d at 1027. Of import to the present analysis is the significance the *Adamson* court attributed to the "emphasis" placed by the Court in *McMillan* and the fact the Pennsylvania statute did not operate to alter the sentencing range already available to the trial court. 865 F.2d at 1027–1028. Because the finding of aggravating circumstances exposed the defendant to greater or additional punishment under the Arizona scheme, the *Adamson* court concluded the finding must be afforded the status of an "element" of a capital offense. *Id.*

I am unpersuaded that *Adamson* controls disposition of the issue *sub judice*. The court's conclusions in *Adamson* cannot

---

11. A reading of Mont.Code Ann. § 46–18–221 would indicate otherwise; a conclusion reached by the dissent in *Krantz*. 788 P.2d at 306–07, 47 St.Rptr. at 464–66 (Sheehy, J., dissenting).

12. There exists no indication Montana restructured its criminal code and concomitant penalty structure in an attempt to "evade" the commands of *Winship*, a specter of concern underlying the Court's rationale in *Winship* and *Mullaney*. *See, Mullaney*, 421 U.S. at 698, 95 S.Ct. at 1889. The Montana Legislature adopted the weapon enhancement statute as part of a bill

intended to limit the discretion of sentencing courts. *State v. Krantz, supra*, 788 P.2d at 304, 47 St.Rptr. at 461. No claim is made, nor is the court aware, that a revision of the substantive criminal statutes occurred contemporaneously with the enactment of the enhancement scheme. *Id.*

13. The *Adamson* court employed, in essence, the historical test advanced by the *Patterson* dissent, 432 U.S. at 216, 97 S.Ct. at 2330 (Powell, J., dissenting), and alluded to by the Court in *McMillan*. 477 U.S. at 90, 106 S.Ct. at 2418.

be divorced from the historical considerations assessed by the court in striking down the Arizona statutory scheme. The "revised" statutory scheme, the court observed, "*withdrew* from the definition of its homicide crimes various 'elements' traditionally preserved in Arizona for jury determination and reclassified them as judicial sentencing circumstances." 865 F.2d at 1027. (emphasis in original). "The confluence of the elements and circumstances, combined with the simultaneous repeal of the statute allocating the burden of proving mitigation at trial and enactment of the statute allocating this burden at judicial sentencing, distinguishes Arizona's scheme from the one in McMillan." 865 F.2d at 1027. Unlike the Arizona statutory scheme addressed in *Adamson*, Montana's sentence enhancement scheme was not part of a revision of the substantive criminal statutes which operated to withdraw particular "elements" of substantive crimes traditionally preserved for determination by a jury, and simply classify those elements as sentencing considerations. *See, Krantz, supra*, 788 P.2d at 305, 47 St.Rptr. at 462.[14]

Any distinction drawn between the Pennsylvania scheme and the Montana scheme, I believe, would prove illusory, in view of the adjudication of the Due Process Clause rendered by the majority opinion in *McMillan*.[15] The procedural requirements that states must meet to comply with the mandate of the Due Process Clause are not amorphous in nature, left to be defined by the legislation of a particular state. *See, McMillan*, 477 U.S. at 93, 106 S.Ct. at 2419–20 (Marshall, J., dissenting). This principle is the very bedrock of the *Winship/Mullaney* rationale, which requires a due process analysis that looks to the "operation and effect of the law as applied." *Mullaney*, 421 U.S. at 699, 95 S.Ct. at 1890 (*citing, St. Louis S.W.R. Co. v. Arkansas*,

**14.** The *Adamson* court observed: "[T]he parameters of what an 'element'—so as to fall within the jury's factfinding responsibilities—remain elusive. A line of due process cases considering such contours has failed to produce concrete guidelines." 865 F.2d at 1024. *Adamson*, the present case, and *McMillan* itself, poignantly exemplify the difficulty of establishing discernible contours for determining when state criminal legislation crosses the permissible constitutional line.

In taking issue with the *McMillan* majority, Justice Stevens urged the majority to recognize the "purposive" approach adopted by the Court in *In re Winship* in attempting to define the precise contours of the Due Process Clause. 477 U.S. at 98, 106 S.Ct. at 2422–2423 (Stevens, J., dissenting). The distinction between aggravating and mitigating facts, he observed, plays a vital role in maintaining the integrity of the Constitution, in particular the Due Process Clause. 477 U.S. at 100–103, 106 S.Ct. at 2423–2425. One would have to believe Justice Stevens envisioned the dilemma the more nebulous standard adopted by the *McMillan* majority would create in its application.

**15.** I am compelled to note my agreement with the dissenting opinions expressed by Justice Powell in *Patterson*, 432 U.S. at 216–232, 97 S.Ct. at 2330–2338, and Justice Stevens in *McMillan*, 477 U.S. at 95–104, 106 S.Ct. at 2421–2425. While it is uncontroverted that it is the State's business to define criminal conduct and prescribe appropriate penalties, "nothing in *Patterson* or any of its predecessors authorizes a State to decide for itself which of the ingredients of the prohibited transaction are 'elements' that it

must prove beyond a reasonable doubt at trial." *McMillan*, 477 U.S. at 98, 106 S.Ct. at 2422 (Stevens, J., dissenting). "A state legislature may not dispense with the requirement of proof beyond a reasonable doubt for conduct that it targets for severe criminal penalties.... The Due Process Clause requires it to prove any component of the prohibited transaction that gives rise to both a special stigma and special punishment beyond a reasonable doubt. This much has been evident at least since *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)." *Id.* at 96, 106 S.Ct. at 2421.

I believe the Due Process Clause, as interpreted by the *In re Winship* court, requires possession of a firearm, under the Montana scheme, to be considered an element of a criminal offense to which the proof beyond a reasonable doubt requirement applies. My opinion, however, does not constitute the supreme law of the land. The interpretation of the Due Process Clause, as embodied in the Supreme Court's decision in *McMillan*, constitutes the controlling law in this case. Any change or clarification of that law must emanate from the Supreme Court. In that regard, Justice Powell expressed his confidence that the Court would, even under the formalistic approach of constitutional adjudication adopted in *Patterson*, "find some way" to strike down a formalistically correct yet egregious statute. 432 U.S. at 225 n. 9, 97 S.Ct. at 2335 n. 9. Yet, as he correctly observed, the approach adopted in *Patterson*, and carried on in *McMillan*, fails to establish a "conceptual framework for distinguishing abuses from legitimate legislative adjustments" in defining crime in the concomitant burden of persuasion. *Id.*

235 U.S. 350, 362, 35 S.Ct. 99, 102, 59 L.Ed. 265 (1914)). In that vein, once a state defines a criminal offense, "the Due Process Clause requires it to prove any component of the prohibited transaction that gives rise to both a special stigma and a special punishment beyond a reasonable doubt." *McMillan*, 477 U.S. at 96, 106 S.Ct. at 2421 (Stevens, J., dissenting). The clear import of *McMillan* lies in the Court's recognition that possession of a weapon, while a factor which bears upon the severity of punishment, is not an "element" of a criminal offense which due process of law requires to be proven beyond a reasonable doubt. 477 U.S. at 89–91, 106 S.Ct. at 2417–2419. A state's decision to dictate that a factor traditionally considered by sentencing courts to bear on punishment— use of a weapon in committing a felony— does not "transfor[m] against its will a sentencing factor into an 'element' of some hypothetical 'offense'." 477 U.S. at 90, 106 S.Ct. at 2418. In view of the rationale employed by the Court in *McMillan*, I am unable to perceive how the "due process calculus" would change based upon the statutory methodology utilized by a legislature in dictating that possession of a weapon is to be considered in passing sentence for a criminal offense. 477 U.S. at 92, 106 S.Ct. at 2419.[16]

Therefore, the court holds the Montana weapon enhancement statute, Mont.Code Ann. § 46–18–221 (1985), is not violative of the Due Process Clause of the fourteenth amendment either on its face, or as applied to the petitioner Dan Nichols.

The conclusion that the possession of a weapon does not constitute an element of the substantive crime of kidnapping with which Nichols was charged is determinative of the remainder of the constitutional challenge Nichols advances. Therefore,

IT IS HEREBY ORDERED that the present petition for habeas corpus relief, pursuant to 28 U.S.C. § 2254, be, and the same hereby is, DENIED.

16. Recognition of the fact the procedural mandate of the Due Process Clause does not depend upon the legislative enactment of a particular state compels this court to conclude that Mon-

The Clerk shall enter JUDGMENT accordingly, and notify the parties as to the entry thereof.

DATED this 3rd day of May, 1990.

tana's weapon enhancement statute falls on the permissible side of the constitutional line. Ironically enough, recognition of this fact prompted the dissents in both *Patterson* and *McMillan*.