**Dan NICHOLS, Petitioner–Appellant,**

v.

**Jack McCORMICK, Warden, Respondent–Appellee.**

No. 90–35416.

United States Court of Appeals, Ninth Circuit.

Oct. 8, 1991.

Wendy Holton, Helena, Mont., for petitioner-appellant.

Elizabeth S. Baker, Asst. Atty. Gen., Helena, Mont., for respondent-appellee.

Before BROWNING, WRIGHT and FARRIS, Circuit Judges.

## ORDER

The panel has voted to deny appellant's petition for rehearing and to reject the suggestion for rehearing en banc.

The full court was advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed.R.App.P. 35.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

NORRIS, Circuit Judge, dissents from the failure of the court to rehear the case en banc.

NORRIS, Circuit Judge, with whom HUG, PREGERSON and REINHARDT, Circuit Judges, join, dissenting from the denial of rehearing en banc:

Dan Nichols was indicted of kidnapping under a Montana statute that subjected him to a maximum penalty of ten years of imprisonment. See Mont.Code Ann. § 45–5–302(2) ("A person convicted of the offense of kidnapping shall be imprisoned in the state prison for a term of not less than 2 years or more than 10 years...."). The kidnapping statute, MCA § 45–5–302, does not provide for any enhancement of this statutory maximum of ten years. Nichols was also indicted of assault under a Montana statute that subjected him to a maximum penalty of six months of imprisonment. See Mont.Code Ann. § 45–5–201. At trial, a jury found him guilty of both offenses beyond any reasonable doubt.

At sentencing, the judge sentenced defendant to the ten-year maximum under the kidnapping statute and to the six-month maximum under the assault statute. See State v. Nichols, 222 Mont. 71, 720 P.2d 1157, 1158 (1986). The sentencing judge then invoked a separate statute, Mont.Code Ann. § 46–18–221, which reads, in relevant part, as follows:

**Additional sentences for offenses committed with a dangerous weapon.** (1) A person who has been found guilty of any offense and who, while engaged in the commission of that offense, knowingly displayed, brandished, or otherwise used a firearm ... shall, *in addition to the punishment provided for the commission of such offense,* be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years, except as provided in 46–18–222.

MCA § 46–18–221(1) (emphasis added).

Finding that Nichols had knowingly used a weapon while engaged in the felony of kidnapping, the sentencing judge imposed a sentence ten years longer than the maximum sentence authorized by the statutes proscribing the offenses for which Nichols was convicted.

A panel of our court now upholds MCA § 46–18–221 against a constitutional attack and affirms Nichols' sentence. See Nichols v. McCormick, 929 F.2d 507 (9th Cir. 1991). Appellant Nichols argues that the Montana statute is constitutionally invalid because it allows a sentencing judge to enhance the maximum sentence authorized by the kidnapping and assault statutes upon finding that a convicted defendant knowingly used a firearm in the commission of the underlying offense. Such a statutory scheme, Nichols argues, deprives him of his right to a jury trial for facts which expose him to greater penalties than the penalties authorized by the statute of conviction.

In rejecting Nichols' challenge, the panel first invokes LaMere v. Risley, 827 F.2d 622 (9th Cir.1987), for the proposition that the Montana statute at issue is a sentencing statute which does not create a substantive offense. Nichols, 929 F.2d at 509. The panel then relies on McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), to dispose of Nichols' constitutional claim. The Nichols panel reads McMillan as holding that "the Sixth Amendment does not require jury sentencing when a statute makes a weapon possession a sentencing factor rather than an element of a crime." Nichols, 929 F.2d at 509. The Nichols panel also thinks that McMillan left states "free to define possession of a weapon as a sentencing factor"

even when such sentencing factfinding operates to increase a sentence beyond the maximum permitted by the underlying offense. *Id.* at 511.

I dissent from our court's refusal to hear *Nichols* en banc because the *Nichols* panel's reading of *McMillan* and its view that *McMillan* requires that the Montana statute be upheld are simply wrong. *McMillan* does not stand for the simplistic and overly formalistic proposition that, once a fact has been classified as a traditional sentencing factor, due process will always be satisfied if that fact is proved by a mere preponderance at sentencing. On the contrary, *McMillan*, when properly read in light of other Supreme Court case law, clearly indicates that a finding of fact resulting in a sentence in excess of the sentence authorized by the statute of conviction triggers the full panoply of due process protections—including the right to a jury trial and the protections of the reasonable doubt standard. In contrast, *Nichols* issues government, both state and federal, a broad license to evade fundamental constitutional safeguards by shifting the forum of adjudicating charges of criminal misconduct from jury trials to sentencing hearings.

The *Nichols* panel misreads *McMillan*. *McMillan* held that a Pennsylvania sentencing statute that imposed a mandatory minimum sentence for certain convicted defendants who visibly possessed a firearm in the commission of the felony does not violate due process. *McMillan* did not hold that gun possession is *always* a permissible sentencing factor that may be proved by a mere preponderance. Such a holding would have conflicted with the interpretation of the Due Process Clause embodied in the Supreme Court's decisions in *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). *McMillan* neither overruled nor limited these

cases, but rather took great pains to distinguish them. In so doing, the Court emphasized that the Pennsylvania sentencing statute "neither alters the statutory maximum for the crime committed nor creates a separate offense calling for a separate penalty." *McMillan*, 477 U.S. at 87, 106 S.Ct. at 2417. Indeed, the Supreme Court very recently emphasized once again that *McMillan* relied on these two factors in upholding the Pennsylvania statute. *Schad v. Arizona*, —— U.S. ——, 111 S.Ct. 2491, 2504 n. 9, 115 L.Ed.2d 555 (1991). Our panel rushes to uphold the Montana statute without pausing even for a moment to mention or cite, let alone discuss, *Specht, Winship, Mullaney* and the critical portions of the *McMillan* opinion discussing these cases.[1]

A careful reading of *McMillan*, in light of these Supreme Court precedents, shows clearly that *McMillan* does not stand for the proposition that due process is satisfied when a statute authorizes a sentencing judge to impose a sentence *in excess* of the statutory maximum allowed by the offense of conviction upon finding that the defendant "knowingly used a firearm" in the commission of that offense. It is the authority to exceed the statutory maximum for the underlying offense that differentiates the Montana statute at issue in *Nichols* from the Pennsylvania statute at issue in *McMillan*. *McMillan*, when properly read in light of *Specht, Winship* and *Mullaney*, dictates the conclusion in *Nichols* that the Montana statute is unconstitutional because it deprives the defendant of the right to a jury trial for each element of a crime.

There is an additional reason why *McMillan* does not control the result in this case and why the Montana gun statute is invalid. It is undisputed that "[t]he safeguards of due process are not rendered unavailable simply because a determination may already have been reached that would stigmatize the defendant and that might lead

1. Contrary to our panel, the Montana Supreme Court discussed all three cases in rejecting a similar challenge in a different case. *State v. Krantz*, 241 Mont. 501, 788 P.2d 298, 301–03 (Mont.1990). So did the district court below in denying habeas relief. *Nichols v. McCormick*, 738 F.Supp. 362, 365–71 (D.Mont.1990).

to a significant impairment of personal liberty." *Mullaney*, 421 U.S. at 698, 95 S.Ct. at 1889; *see also Burns v. United States*, —— U.S. ——, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991); *id.* 111 S.Ct. at 2188, 2191 (Souter, J., dissenting). Under the Supreme Court's liberty interest jurisprudence, *see, e.g., Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), and *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), Nichols had a liberty interest in a sentence at or below the statutory maximum set by the statute of conviction because, absent a finding of gun use, the Montana sentencing judge had no authority to impose a sentence longer than the statutory maximum. By contrast, the convicted defendant in *McMillan* had no liberty interest in a sentence below the statutory minimum set by a finding of gun possession, because a sentencing judge had unfettered discretion to impose a sentence above that statutory minimum, even absent a finding of gun possession. Because a liberty interest is at stake in *Nichols*, the due process calculus is dramatically different. When, as in this case, sentencing fact-finding permits a judge to impose ten years of *additional* incarceration (and indeed *requires* a judge to impose two years of additional incarceration), we must determine what process is due before a defendant is deprived of his liberty. The panel fails to conduct any such inquiry.

Because the panel opinion misreads *McMillan* in a way that opens the door for shifting much of criminal adjudication to the sentencing phase and thus evading the constitutional protections afforded to a defendant threatened with a deprivation of liberty, I respectfully dissent from the rejection of the suggestion for rehearing en banc.

My dissent is organized as follows: Part I discusses *Specht, Winship, Mullaney* and *McMillan*. It focusses particularly on the constitutional line drawn in *McMillan* between permissible and impermissible statutory distinctions between trial and sentencing and shows why MCA § 46–18–221 falls on the impermissible side of the line. Part II highlights the liberty interest issue. Finally, Part III discusses some of the implications of the panel's holding in *Nichols* for our constitutional jurisprudence and for sentencing practices in both state and federal systems.

I

A

In *Specht*, defendant was convicted for indecent liberties under one Colorado statute that carried a maximum sentence of 10 years. At sentencing, the state evoked the Sex Offender Act, which increased the maximum penalty to life imprisonment, upon a finding that a defendant convicted of specific sex offenses "constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." Col.Rev.Stat.Ann. § 39–19–1 (1963). The Court held that a defendant faced with such a statute is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. *Specht*, 386 U.S. at 610, 87 S.Ct. at 1212.

What made the Sex Offender Act different from other sentencing acts that the Supreme Court had upheld in an earlier case, *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)? First, the "Sex Offender Act does not make the commission of a specified crime the basis for sentencing. It makes one conviction the basis for commencing another proceeding under another Act." *Specht*, 386 U.S. at 608, 87 S.Ct. at 1211. Second, whether a person constitutes a threat of bodily harm or is an habitual offender and mentally ill is "a new finding of fact that was not an ingredient of the offense charged." *Id.* (citations omitted).

In finding that the Sex Offender Act violated due process, the Court also adopted as its own the view of the Third Circuit which struck down a "comparable Pennsylvania statute" because " '[i]t [creates] a separate criminal proceeding which

may be invoked after conviction of one of the specified crimes.'" *Id.* at 609, 87 S.Ct. at 1212 (quoting *United States ex rel. Gerchman v. Maroney,* 355 F.2d 302, 312 (3d Cir.1966)). The Court went on to quote from *Gerchman* language that is crucial to the due process calculus in *Nichols:*

> "Petitioner ... was entitled to a full judicial hearing before the *magnified* sentence was imposed. At such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections. A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial."

*Id.* 386 U.S. at 609–10, 87 S.Ct. at 1212 (emphasis added).

The constitutional principle—that a defendant is entitled to the full panoply of protections which due process guarantees in criminal proceedings before a "magnified" sentence is imposed—had already been established in pre-*Specht* Supreme Court case law. *See, e.g., Chandler v. Fretag,* 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954). The Third Circuit's opinion in *Gerchman* provides the most concise statement of this constitutional principle and its history:

> The ... imposition of *greater* punishment than that provided for conviction of a constituent element after an additional finding of fact ... led the Supreme Court to hold in *Chandler v. Fretag,* 348 U.S. 3 [75 S.Ct. 1, 99 L.Ed. 4] (1954) and *Oyler v. Boles,* 368 U.S. 448 [82 S.Ct. 501, 7 L.Ed.2d 446] (1962), that the [statutes] there involved ... created essentially independent criminal offenses. This required that the determination of the issues of fact involved in the statutory proceedings must conform to the constitutionally guaranteed safeguards of due process in substantive criminal trials.

*Gerchman,* 355 F.2d at 311 (emphasis added).

*Specht* was decided in 1967, before the Supreme Court in *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), incorporated the right to jury trial into the Due Process Clause of the Fourteenth Amendment and before the Court in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), held that due process requires that all elements of a crime be proved beyond a reasonable doubt.

*Mullaney* is the first case in which the Court had the opportunity to revisit *Specht* in a post-*Duncan* and post-*Winship* context. In *Mullaney,* the Court faced a due process challenge to a Maine statute which required the defendant charged with murder to prove certain facts in order to reduce a homicide to manslaughter. Under the statute, a defendant convicted of homicide would receive a life sentence; a defendant convicted of manslaughter was subject to a sentence no greater than twenty years. Reasoning that "when viewed in terms of the *potential* difference in restrictions of personal liberty attendant to each conviction, the distinction established by Maine between murder and manslaughter may be of greater importance than the difference between guilt and innocence for many lesser crimes," *Mullaney,* 421 U.S. at 698, 95 S.Ct. at 1889, the Court in *Mullaney* held that the Maine homicide statute violated the due process mandate of *In re Winship* that the state prove each element of a crime beyond a reasonable doubt. *Id.* 421 U.S. at 698–700, 95 S.Ct. at 1889–90. Because "[t]he safeguards of due process are not rendered unavailing simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty," *id.* at 698, 95 S.Ct. at 1889, the Court reaffirmed its view in *Specht* that due process requires that a convicted defendant be afforded the full panoply of due process protections if sentencing factfinding will have a serious impact on the length of the sentence. *Id.* The Court said:

> [T]he criminal law of Maine, like that of other jurisdictions, is concerned not only with guilt or innocence in the abstract but also with the degree of crimi-

nal culpability. Maine has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor. Because the former are less 'blameworth[y],' they are subject to substantially less severe penalties. By drawing this distinction, while refusing to require the prosecution to establish beyond a reasonable doubt the fact upon which it turns, Maine denigrates the interests found critical in *Winship.*

*Id.* 421 U.S. at 697–98, 95 S.Ct. at 1889 (citations omitted).

In *McMillan v. United States,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Court had to determine what constitutes an element of a crime for the purposes of the due process calculus.[2] Specifically, the Court had to determine whether the fact of "visible gun possession" *as it was used in a particular Pennsylvania sentencing scheme* constituted an element of a crime. The Pennsylvania gun enhancement statute at issue provided, "[A]nyone convicted of certain enumerated felonies is subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge finds, by a preponderance of the evidence, that the person 'visibly possessed a firearm' during the commission of the offense." *Id.* at 81, 106 S.Ct. at 2413. The statutes proscribing the enumerated felonies—murder of the third degree, voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery, aggravated assault and kidnapping—all authorized sentences above this mandatory minimum of five years. Thus, by its own terms, the Pennsylvania gun enhancement statute did "not authorize a sentence in excess of that otherwise allowed for that offense." *Id.* at 82, 106 S.Ct. at 2414. Rather, it "operate[d] to divest the judge of discretion to impose any sentence of less than five years

for the underlying felony." *Id.* at 81–82, 106 S.Ct. at 2413–14.

In upholding the statute against a challenge that the Due Process Clause requires a sentencing factor with mandatory penal consequences to be proved beyond a reasonable doubt, the Supreme Court noted that the Pennsylvania legislature had defined gun possession as a sentencing factor, rather than an element of a crime, and that it would generally defer to state legislative classification of such factors. *Id.* at 86, 106 S.Ct. at 2416. However, the Court also stated that there are constitutional limits beyond which a legislature cannot go. *Id.* ("As *Patterson* recognized, of course, there are constitutional limits to the State's power in this regard; in certain limited circumstances *Winship's* reasonable-doubt requirement applies to facts not formally identified as elements of the offense charged.") Because the Court did not articulate those limits in *McMillan,* our only source of guidance comes from the Court's discussion of cases in which the Court did *not* defer to legislative classification of certain facts as sentencing factors, to wit, *Mullaney* and *Specht.*

*McMillan* neither overruled nor limited *Mullaney,* but rather distinguished it in one crucial paragraph. *See* 477 U.S. at 87–88, 106 S.Ct. at 2416–17. That paragraph contains the extent of the Court's discussion of the distinction between the invalid Maine statute at issue in *Mullaney* and the valid Pennsylvania statute at issue in *McMillan.* Because the Court upheld a due process challenge in *Mullaney* but rejected it in *McMillan,* the distinctions it drew in that paragraph take on a critical significance in determining the constitutionality of sentencing schemes. The Court said:

> [The Pennsylvania statute] neither alters the maximum penalty for the crime committed nor creates a separate offense

**2.** The only arguably relevant Supreme Court case in the period between *Mullaney* and *McMillan* is *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In *Patterson,* the Court upheld a New York statute which placed on a defendant convicted of murder the burden of proving insanity as an affirmative defense. The Court thus declined an invitation

to hold that "a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." *Id.* at 210, 97 S.Ct. at 2327. At the same time, the Court in *Patterson* reaffirmed its holding in *In re Winship* that the state must prove beyond a reasonable doubt all elements of a crime. *Id.* at 208, 97 S.Ct. at 2326.

calling for a separate penalty; *it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm.* [The statute] 'ups the ante' for the defendant only by raising to five years the minimum sentence which may be imposed within the statutory plan. The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense.

*Id.* 477 U.S. at 87–88, 106 S.Ct. at 2417 (emphasis added) (footnote omitted).

Similarly, the Court in *McMillan* distinguished *Specht*. Once again, the Court neither limited nor overruled that case, but distinguished the Pennsylvania statute from the Colorado statute at issue in *Specht* on the ground that the Pennsylvania statute merely "rais[es] the minimum sentence that may be imposed by the trial court." *Id.* at 89, 106 S.Ct. at 2418.

### B

The Court's constitutional line-drawing in *McMillan* is directly applicable to *Nichols*. Because *Nichols* triggers precisely the question of the constitutional line between sentencing factors that may be proved by a mere preponderance (*McMillan*) and elements of crime that must be proved beyond a reasonable doubt (*Mullaney/Specht*), I focus on the crucial paragraph in *McMillan* in analyzing MCA § 46–18–221. *See also Schad*, 111 S.Ct. at 2504 n. 9 (referring to *McMillan* as "relying on the fact that under Pennsylvania law possession of a weapon 'neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty'") (quoting *McMillan*, 477 U.S. at 87–88, 106 S.Ct. at 2417).

I begin the *McMillan* inquiry by noting that it is undisputed that the Montana statute "alters the maximum penalty for the crime committed." The *Nichols* panel admits as much. *Nichols*, 929 F.2d at 510 ("Nichols is correct in his assertion that the Montana statute, unlike that of Pennsylvania in *McMillan*, allows the sentencing court to impose a penalty in excess of that permitted by the underlying offense."). The panel, however, rejects appellant Nichols' argument that, once a fact alters the maximum penalty authorized by the statute of conviction, the fact constitutes an element of a crime that must be proved beyond a reasonable doubt, notwithstanding a legislative classification of that fact as a "sentencing factor."

Appellant Nichols argues that *McMillan* promulgates a per se rule that all facts which permit or require a sentence enhancement beyond the statutory maximum authorized by the offense of conviction constitute elements of a crime. In rejecting this argument, the *Nichols* panel offers an alternate reading of *McMillan*. The panel suggests that the enhancement of the statutory result is not critical to the due process calculus, but rather is one factor that must be weighed in with two additional factors:

One factor is whether the state legislature has attempted to circumvent due process protections by redefining elements of an offense as sentencing factors.... Another factor is whether the legislature has relieved the prosecution of its burden of proving all of the elements of an offense, as defined by the state, beyond a reasonable doubt.

*Nichols*, 929 F.2d at 510–11.

The panel's reading overlooks the fact that to consider these two factors without reference to preexisting law would beg the question at hand. As a result, the panel is led into the mistaken view that these two factors can have weight in situations where there is no relevant preexisting law.[3] Because these two factors are only relevant when a legislature either *re*classifies an element of a crime as a sentencing factor

---

**3.** As I explain below, the panel also erred in not examining the Montana criminal law at the time MCA § 46–18–221 was passed. My independent examination of the law indicates that until the passage of MCA § 46–18–221, Montana always treated the display or use of firearms either as a separate crime or as an element of a crime.

or when it relieves the state of the burden of proving an element of a previously proscribed crime, as defined by the state, beyond a reasonable doubt, they cannot speak to the permissibility of a legislature's classifying a fact as a sentencing factor in the first place. Legislatures criminalize new conduct all the time. Under the reasoning of the *Nichols* panel, the legislature could classify all these new "offenses" as "sentencing factors" with constitutional impunity. Surely *McMillan* did not sanction such a result; had it done so, it would have had to overrule *Mullaney*, which had deemed impermissible Maine's refusal to classify "heat of passion" as an element of a crime. *Mullaney* struck down Maine's classification despite the fact that it comported with the common law classification which had remained unchanged since at least Blackstone's age. *Mullaney*, 421 U.S. at 693–94, 95 S.Ct. at 1887 (quoting **4 W. Blackstone, Commentaries** * 201).

When accurately read, *McMillan* gives us a process for evaluating the permissibility of a state's classification of a novel fact as a sentencing factor. Appellant Nichols is correct in his view that, under the Supreme Court's case law, a fact is an element of a crime if it enhances the statutory maximum for the crime of conviction. A different reading of the law would render meaningless *McMillan*'s language that "there are constitutional limits to the State's power in this regard" and would

empty *Mullaney* and *Specht* of any meaning as well. It simply cannot be that a state legislature can, without any check, start with an offense of assault, subject it to some maximum, and then allow a sentencing judge to enhance the penalty for all sorts of novel factors up to life imprisonment.[4]

My worst case scenario is not that farfetched. In Montana, under MCA § 45–5–202(1), a person convicted of aggravated assault for "purposely or knowingly causing a bodily injury to another" is subject to a maximum prison term of 10 years. Under MCA § 46–18–224, a sentencing statute under Montana law, a person who has been found guilty of an offense in which bodily injury occurred (such as aggravated assault) and "who knowingly used or *carried a handgun loaded with armor-piercing ammunition* during the commission of the offense *must, in addition to the sentence for the offense,* be sentenced to a term of imprisonment ... of not less than 5 years or more than 25 years." (Emphasis added). This enhancement, coupled with the ten year enhancement for "knowingly *display[ing]* a firearm," MCA § 46–18–211, could increase defendant's sentence from 10 years to 45 years. And this deprivation of liberty would take place without a jury trial or the protection of the reasonable doubt standard.

*McMillan* cannot fairly be read as requiring such broad deference to legislative

---

4. The district court also misread *McMillan*, but in a different way. Under the district court's reading of *McMillan*, once a state has permissibly declared a factor to be a *sentencing* factor, it may authorize that it be proved by a mere preponderance at sentencing. Because *McMillan* declared gun possession to be a permissible sentencing factor, the court felt bound to hold that MCA § 46–18–221 passes constitutional muster. *Nichols*, 738 F.Supp. at 370–71 ("The clear import of *McMillan* lies in the Court's recognition that possession of a weapon, while a factor which bears upon the severity of punishment, is not an "element" of a criminal offense which due process of law requires to be proved beyond a reasonable doubt.").

With all due respect, the district court got the reasoning in *McMillan* backwards. The Supreme Court in *McMillan* did not weigh the due process calculus in the abstract and decide that gun possession is a permissible sentencing

factor for all situations. All the Court did was to uphold a particular sentencing scheme which neither altered the maximum penalty for the underlying substantive offense nor created a separate offense calling for a separate penalty. The Court made it amply clear that the constitutional issue would be controlled by *Mullaney* if these factors pointed in the opposite direction. Indeed, the Court recently reaffirmed this view that these two factors are central to the constitutionality of a sentencing scheme. *See Schad v. Arizona,* — U.S. ——, 111 S.Ct. 2491, 2504 n. 9, 115 L.Ed.2d 555 (1991). We, too, have adopted this straightforward reading of *McMillan,* both in *United States v. McDoughtery,* 920 F.2d 569, 575 (9th Cir.1990) and *Adamson v. Ricketts,* 865 F.2d 1011, 1027–28 (9th Cir.1988) (en banc). The Montana statute both alters the maximum penalty for the underlying substantive offense and creates a separate offense calling for a separate penalty.

classifications of facts as sentencing factors, particularly in light of the Court's recognition that there are limits beyond which a legislature cannot go and its reaffirmation of *Mullaney.* In *Mullaney,* in referring to the *Winship* reasonable doubt mandate, the Court stated that *Winship* cannot be "limited to those facts that constitute a crime as defined by state law...." 421 U.S. at 698, 95 S.Ct. at 1889. The Court went on to say that "*Winship* is concerned with substance rather than ... formalism. The rationale of that case requires an analysis that looks to the 'operation and effect of the law as applied and enforced by the state,' and to the interests of both the State and the defendant as affected by the allocation of the burden of proof." *Id.* 421 U.S. at 699, 95 S.Ct. at 1890 (footnote and citations omitted). The operation of the Montana law is plainly at odds with the *Winship* due process mandate and with the thrust of the *McMillan* analysis.

In any case, however, Montana has always treated the carrying and use of various arms either as a separate crime or as an element of a crime. Several sections of the Montana substantive criminal code treat use of a firearm as an element of a crime. For instance, MCA § 45–5–201(1)(b) defines assault, in part, as "negligently caus[ing] bodily injury to another *with a weapon* " and subjects the offender to a maximum penalty of six months in jail. If no weapon was involved, "negligently caus[ing] bodily injury" is not criminalized. Similarly, MCA § 45–5–202 makes *use of a weapon* the difference between "aggravated assault," which subjects the defendant to a penalty of 0–10 years, and "felony assault," which subjects the defendant to a penalty of 2–20 years. *Compare* MCA § 45–5–202(1) (defining "aggravated assault" as "purposely or knowingly caus[ing] serious bodily injury to another") with MCA § 45–5–202(2) (defining "felony assault" as "purposely or knowingly caus[ing] bodily injury to another *with a weapon* ") (emphasis added). Other provi-

sions of the Montana code criminalize the use of certain types of firearms in the commission of other crimes. For instance, MCA § 45–8–303, a substantive criminal statute, criminalizes "use of a machine gun in the perpetration or attempted perpetration of a crime of violence" and subjects it to a penalty of up to 20–years imprisonment. These words from a substantive criminal statute sound strikingly similar to the words in the sentencing statute at issue here which subjects use of a gun in the commission of any offense to enhanced penalties. Several provisions of the Montana code criminalize the mere possession of certain types of firearms. MCA § 45–8–316 criminalizes "carr[ying] or bear[ing] concealed upon [one's] person a dirk, dagger, pistol, revolver, slingshot, sword cane, billy, knuckles made of any metal or hard substance, knife having a blade 4 inches long or longer, razor, not including a safety razor." MCA § 45–8–318 criminalizes the possession of a deadly weapon by a prisoner and subjects a violator to a prison term of 5–15 years. MCA § 45–8–331 criminalizes the use of a switchblade knife and subjects the violator to a six month prison term. Other sections of the Montana code criminalize the possession of explosives, MCA § 45–8–335, the possession of a silencer, MCA § 45–8–336, and the possession of a sawed-off firearm, MCA § 45–8–340. MCA § 45–8–343 criminalizes the firing of firearms.

Against this background, in 1977, two years after *Mullaney,* Montana, having decided that persons who knowingly display, brandish or use firearms in the commission of any offense must be subject to enhanced penalties, passed a statute that subjected such persons to enhanced penalties of 2–10 years. Faced with a constitutional challenge, the Montana Supreme Court declared this statute to be a sentencing statute. Can anyone seriously argue that this is not an example of a state redefining an element of a crime as a sentencing factor in an effort to evade *Winship's* reasonable doubt requirement? [5] If the Montana stat-

---

5.  The Montana legislature even called this penal fact an "offense." Indeed, on its face the Mon-

tana statute appears to create a substantive offense calling for a separate penalty. In this

ute is not "creat[ing] a separate offense calling for a separate penalty," I cannot imagine what would.

Even if *McMillan* offered no guidance, I would fall back on *Mullaney.* Consistent with *Mullaney,* "when viewed in terms of the *potential* difference in restrictions of personal liberty attendant to each conviction, the distinction established by [Montana] between [a felony committed while possessing a firearm] and [a felony committed without a firearm] [*is* ] of greater importance than the difference between guilt or innocence for [negligent homicide, kidnapping and many other lesser crimes]." 421 U.S. at 698, 95 S.Ct. at 1889 (emphasis added) (paraphrase). Nevertheless, under the *Nichols* opinion, defendant is afforded due process protections for trial factfinding but not sentencing factfinding.

An illustration of the operation of the Montana statutes highlights this point: In Montana, a defendant convicted of kidnapping and assault at trial faces a possible maximum sentence of ten years and six months. If he is also convicted of negligent homicide, he faces an additional potential sentence of ten years. This is equal to the additional potential sentence he would face if a sentencing judge were to find, by a mere preponderance, that he used a "firearm" during the commission of the offense. It is clear then that defendant's interest in sentencing factfinding under MCA § 46–18–221 is greater than his interest in trial factfinding under many Montana criminal statutes. If a jury finds that the defendant has committed the offense of negligent homicide, for instance, he is exposed to an additional penalty of ten years. The sentencing judge, however, may decline to impose any prison term for that offense. By contrast, if a sentencing judge finds that the defendant has used a firearm, the defendant is not only exposed to the same amount of additional penalty—ten years—, but the sentencing judge has no choice but to sentence defendant to at least two additional years in prison.

regard, the statute's provision for repeated offenders is instructive:

> A person *convicted* of a second or subsequent *offense under this section shall,* in addition to the punishment provided for the commission of the present offense, be sentenced to a term of imprisonment in the state prison of not less than 4 years or more than 20 years....

And, further:

> For the purposes of this subsection, the following persons shall be considered to have been *convicted* of a *previous offense under this section:* (a) a person who has been previously *convicted* of an *offense,* committed on a different occasion that the present *offense,* under 18 U.S.C. § 924(c)....

46–18–221(2) (emphasis added).

Who is a person "convicted of a second or subsequent offense under this section," but somebody who has been previously found to have knowingly possessed a firearm during the commission of a felony? And what is an "offense ... under 18 U.S.C. § 924(c)," but use or possession of a firearm during the commission of any crime of violence which federal courts have uniformly considered an element of a crime that triggers the full panoply of due process protections including the right to a jury trial? *United States v. Ramirez,* 482 F.2d 807 (2nd Cir.1973); *United States v. Sudduth,* 457 F.2d 1198 (10th Cir.1972).

The language of the Montana statute could not have been plainer: The knowing possession of a firearm is an offense; if a defendant is convicted of a first offense under this statute, he is exposed to a sentence of 2–10 years; if he is convicted of a second offense under this statute, he is exposed to a sentence of 4–20 years.

How did the district court, and on its footsteps, a panel of this circuit ignore this plain language and declare this statute to be a pure sentencing statute? Because the Montana Supreme Court, *ex post facto* and faced with a federal constitutional challenge along the *Mullaney/McMillan* lines, held that the statute does not create a separate substantive offense. *See Nichols,* 738 F.Supp. at 365 (relying on *State v. Krantz,* 241 Mont. 501, 788 P.2d 298 (1990)). *But see State v. Krantz,* 241 Mont. 501, 788 P.2d 298, 306 (1990) (Sheehy, J., concurring and dissenting). If this is not an example of a state redefining a crime as a sentencing factor in order to evade the constitutional mandate of *In re Winship,* what is?

In light of the Montana Supreme Court's decision in *State v. Krantz,* I might even agree with the *Nichols* panel that "the [Montana] *legislature* has [not] attempted to circumvent due process protections by redefining elements of an offense as sentencing factors." *Nichols* 929 F.2d at 510 (emphasis added). That's because the Montana legislature declared knowing possession to be "an offense." It is the Montana *Supreme Court* that has redefined elements of an offense, nay a whole offense, as a sentencing factor. Surely, the *McMillan* scrutiny of state action in this area would not be any less because the reclassification is carried out by state judges rather than state legislators.

Such a constitutional scheme makes no sense. It is not authorized by *McMillan.* And, for good reason, it is condemned by *Mullaney.*

## II

In Part I, I discussed why *McMillan,* when read in light of *Specht* and *Mullaney,* makes it clear that a sentencing statute enhancing the maximum penalty authorized by the crime of conviction would be invalid unless the proscribed facts have been found beyond a reasonable doubt by a jury. There is an additional reason, however, why *McMillan* cannot be read as authorizing a sentencing statute to enhance the maximum penalty authorized by the statute of conviction. That reason is provided by the Supreme Court's liberty interest jurisprudence. *See, e.g., Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

Central to any liberty interest analysis is the extent to which governmental discretion to take away liberty has been cabined through legislation. *See, e.g., Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) ("The ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the [relevant] authority...."); *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). In the parole context, for instance, a convicted defendant may have a liberty interest in an early release date if the discretion of the parole authority is restricted by statute. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). In *Board of Pardons v. Allen,* 482 U.S. 369, 381, 107 S.Ct. 2415, 2422, 96 L.Ed.2d 303 (1987), the Court applied *Greenholtz* in holding that a Montana parole release statute created a liberty interest. The Montana Parole Board had argued that because the criteria for denying release were very broad, *e.g.,* "detriment to the prisoner or to the community," the Board retained so much discretion that no liberty interest was created despite statutory language that "the board *shall* release on parole ... any person...." 482 U.S. at 376, 107 S.Ct. at 2420. The Court, rejecting this argument, held that mandatory language created a liberty interest even when the regulatory scheme "cannot be applied mechanically," as long as it requires release when designated findings are made. *Id.* at 375, 377–78, 107 S.Ct. at 2419, 2420.

In this case, Nichols was convicted at trial for kidnapping.[6] MCA § 45–5–320(2) states, "A person convicted of the offense of kidnapping *shall* be imprisoned ... for a term of *not ... more than* 10 years." (Emphasis added). Nichols had a liberty interest in a sentence at or below this statutory maximum set by the statute of conviction because, absent a finding of gun use, the Montana sentencing judge had no authority to impose a sentence longer than the statutory maximum. Thus, even after conviction, Nichols had a liberty interest in not being incarcerated in excess of that period.

The sentencing fact of knowing gun use had a direct and serious impact on Nichols' liberty interest. It not only exposed him to an additional sentence of ten years, but *required* that the sentencing judge impose a sentence of at least two years greater than the sentence she would have otherwise imposed. Indeed, the judge sentenced Nichols to the statutory maximum. Thus, as a result of a seemingly innocuous sentencing finding of fact, Nichols received a sentence of ten years longer than he could have otherwise received.

In *McMillan,* by contrast, the sentencing finding of fact did not impinge upon any liberty interest because the defendant had

---

**6.** For the sake of simplicity, I am assuming that he was not convicted of assault. An assault conviction exposed him to a maximum penalty of six months. The sentencing judge sentenced him at the maximum. My analysis is identical for the kidnapping plus assault conviction.

no liberty interest in a sentence below the statutory minimum of five years. Under the Pennsylvania gun enhancement statute, a defendant had no legitimate basis for expecting a sentence below the gun enhancement *minimum* of five years because the gun enhancement provision did not affect the sentencing judge's discretion to impose a sentence up to the statutory *maximum* of twenty years. Even absent a finding of gun possession, a sentencing judge had unfettered discretion to impose a sentence above that statutory minimum. All that the defendant in *McMillan* lost was a *hope* of a sentence of less than five years. A "unilateral hope" based on mere chance is not enough to create a liberty interest. *See Dumschat*, 452 U.S. at 465, 101 S.Ct. at 2465 (rejecting the idea that "a unilateral hope" based on statistical probability amounts to a legitimate expectation). Absent a statute-based expectation in a lesser sentence, a convicted defendant had no liberty interest at stake in the sentencing factfinding process. In other words, a finding of gun possession, by whatever standard of proof, could not change the "due process calculus." *McMillan*, 477 U.S. at 92, 106 S.Ct. at 2419.

The Montana gun enhancement statute changes the due process calculus dramatically because it takes the constitutionally determinative step of exposing a convicted defendant to a penalty in excess of that authorized by the statute proscribing the offense of conviction. The judge can enhance the sentence only if she makes certain findings of fact specified in the Montana gun enhancement statute. Indeed, the sentencing judge is required to enhance the sentence if she makes those findings of fact.

As I point out in my dissent in *United States v. Restrepo*, 946 F.2d 654, 664 (9th Cir.1991) (en banc) (Norris, J., dissenting), the Supreme Court recently recognized that federal Sentencing Guidelines may create a liberty interest even in a sentence *below* the statutory maximum authorized by the offense of conviction because a sentencing judge cannot depart above the applicable Guidelines range absent a finding

of proscribed facts. *Burns*, 111 S.Ct. at 2187. *Burns* involved the question whether Federal Rule of Criminal Procedure 32 requires notice that the sentencing judge is considering departing upward from the "applicable Guidelines sentencing range." *Id.* at 2184. In interpreting Rule 32 to require such notice, the Court stated, "In this case, were we to read Rule 32 to dispense with notice, we would then have to confront the serious question whether notice in this setting is mandated by the Due Process Clause." *Id.* Implicit in that concern is the Court's recognition that Guidelines sentencing, even at its most discretionary phase, may create a liberty interest in a sentence below the statutory maximum.

In dissent, Justice Souter reached the liberty interest question because he disagreed with the Court's interpretation of Rule 32. In his analysis, Justice Souter found unequivocally that the Sentencing Reform Act creates "an expectation subject to due process protection that [a defendant] will receive a sentence within the presumptively applicable range in the absence of grounds ... justifying departure." *Burns*, 111 S.Ct. at 2192 (Souter, J., dissenting); *see also United States v. Lawrence*, 918 F.2d 68, 73–74 (8th Cir.1990) ("[The Guidelines] give convicted defendants a protected liberty interest to a sentence within the Guidelines range appropriate for their conduct and circumstances.") (Bright, J., dissenting), *cert. denied*, —— U.S. ——, 111 S.Ct. 1399, 113 L.Ed.2d 455 (1991). In his analysis, Justice Souter relied upon *Greenholtz, supra*, and its progeny, which recognized that mandatory parole statutes, by giving convicted defendants an "expectancy of release," create a liberty interest subject to "some measure of constitutional protection." *Greenholtz*, 442 U.S. at 12, 99 S.Ct. at 2106. Justice Souter reasoned that the Sentencing Reform Act similarly created a liberty interest by using mandatory language that a sentencing judge "shall impose a sentence of the kind, and within the range [set forth in the Guidelines,] unless the court finds that there exists an aggravating or mitigating circumstance of

a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." *Burns,* 111 S.Ct. at 2192 (Souter, J., dissenting) (quoting 18 U.S.C. § 3553(b)).

The reasoning of eight Justices in *Burns,*[7] which involved a sentence below the statutory maximum, applies with full force to a factfinding process that enhances a sentence above the statutory maximum. The Montana substantive criminal statutes create a liberty interest in a sentencing at the statutory maximum for the offense of conviction. We must determine then what process is due before a defendant may be deprived of this liberty interest at a subsequent hearing.

Because the Montana substantive criminal statutes create a liberty interest in a sentence at or below the statutory maximum, the panel should have determined what process is due before a defendant is deprived of that interest. Particularly, it ought to have determined what standard of proof satisfies due process. In resolving this constitutional question, *Mullaney* mandates "an analysis that looks ... to the interests of both the State and the defendant as affected by the allocation of the burden of proof." 421 U.S. at 699, 95 S.Ct. at 1890; *accord Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see also Burns,* 111 S.Ct. at 2192–96 (Souter, J., dissenting) (applying the *Mathews* test in the context of sentencing); *Restrepo,* 946 F.2d at 675 (Norris, J., dissenting) (same).

The importance of the liberty interest at stake need not be labored. In *Speiser v. Randall,* 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958), the Supreme Court called a criminal's defendant interest in liberty "an interest of transcending value." *Id.* at 525, 78 S.Ct. at 1342. In *Burns,* Justice Souter said, "The defendant's interest in receiving a sentence not unlawfully higher than the upper limit of the guideline range is ... clearly substantial." 111 S.Ct.

at 2193 (Souter, J., dissenting); *see also Board of Pardons v. Allen,* 482 U.S. 369, 373 n. 3, 107 S.Ct. 2415, 2418 n. 3, 96 L.Ed.2d 303 (1987) ("At stake in the parole-release decision is a return to freedom, albeit conditional freedom; liberty from bodily restraint is at the heart of the liberty protected by the Due Process Clause."); *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."). Under the Montana statute, a defendant's stake in accurate factfinding at sentencing will frequently be as great as, if not greater than, his stake in accurate factfinding at trial because the sentencing factfinding exposes him potentially to greater penalties than trial factfinding does.

In the context of criminal adjudication, we have struck the balance between the interests of defendants and the state in favor of the reasonable-doubt standard of proof because of our view that, "it is far worse to sentence one guilty only of manslaughter as a murderer than to sentence a murderer for the lesser crime of manslaughter." *Mullaney,* 421 U.S. at 703–04, 95 S.Ct. at 1892 (paraphrasing *Winship,* 397 U.S. at 368, 372, 90 S.Ct. at 1075, 1077 (Harlan, J., concurring)). "Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law." *Winship,* 397 U.S. at 364, 90 S.Ct. at 1072.

In *Mullaney,* the Court acknowledged that reasonable doubt "is often a heavy burden for the prosecution to satisfy." 421 U.S. at 701, 95 S.Ct. at 1891. The Court went on to say, however, that "this is the traditional burden which our system of criminal justice deems essential." *Id.* The Court also noted that "the difficulty of meeting such an exacting burden is mitigated ... where the fact at issue is largely

---

7. Justices Blackmun, Stevens, Scalia and Kennedy joined Justice Marshall's opinion for the Court. Justices White and O'Connor joined Justice Souter's dissent. The Chief Justice agreed with Justice Souter's statutory analysis, but did not join the part of Justice Souter's opinion that carried out the liberty interest analysis.

an 'objective, rather than a subjective, behavioral criterion.' " *Id.* at 702, 95 S.Ct. at 1891 (quoting *State v. Rollins*, 295 A.2d 914, 920 (Me.1972)).

Because the panel opinion completely overlooks the important liberty interest at stake in this case, it fails to conduct the applicable constitutional inquiry. It thus determines that the reasonable doubt standard is inapplicable without the benefit of the Supreme Court's liberty interest jurisprudence. This oversight is particularly troubling in light of the constitutionally problematic result the panel reaches.

### III

In *Nichols*, the defendant was also charged with homicide. A jury of his peers, however, found him "not guilty" of that offense. At sentencing, the judge expressed his disappointment with the jury's verdict. *See State v. Nichols*, 222 Mont. 71, 720 P.2d 1157, 1164 (1986) ("Despite the jury's verdict of not guilty for homicide, the judge stated, 'The defendant in my judgment is morally if not equally legally responsible for the death of Al Goldstein and I can't sentence him for that.' "). The judge then invoked the Montana gun use statute at stake here and enhanced defendant's sentence by ten years.

Although these facts are in no way relevant to the constitutionality of the sentencing scheme here, they are a helpful reminder of the rationale underlying the right to a jury trial, which is the cornerstone of our criminal justice system. As the Court put it in *Duncan v. Louisiana:*

> Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard.... If the defendant preferred the common-sense judg-

ment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it.

391 U.S. at 156, 88 S.Ct. at 1451. Here, having preferred the common-sense judgment of the jury, Nichols was nevertheless barred by MCA § 46–18–221 from escaping "the more tutored but perhaps less sympathetic reaction of a single judge." *Id.*

It is undisputed that "the Fourteenth Amendment guarantees a right to jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantees." *Duncan*, 391 U.S. at 149, 88 S.Ct. at 1447. The question is whether a defendant in federal court would be entitled to a jury for a finding of fact that would subject him to a sentence in excess of that authorized by the statute under which he was initially convicted. "In determining whether the length of the authorized prison term or the seriousness of other punishment is enough in itself to require a jury trial, we ... refer to objective criteria, chiefly the existing law and practices in the Nation." *Id.* at 161, 88 S.Ct. at 1453.

I know of no federal case in which a district court enhanced a sentence beyond the maximum authorized by statute by relying on a fact which was not proved at trial beyond a reasonable doubt. Indeed, federal courts have consistently declined to interpret statutes enhancing the statutory maximum as sentencing statutes dispensing of the requirement of jury factfinding. *See, e.g., Simpson v. United States*, 435 U.S. 6, 10, 98 S.Ct. 909, 911, 55 L.Ed.2d 70 (1978); *United States v. Ramirez*, 482 F.2d 807 (2nd Cir.1973); *United States v. Sudduth*, 457 F.2d 1198 (10th Cir.1972).[8]

---

**8.** Cases construing the Armed Career Criminal Act as dispensing with the right to jury trial for a sentencing factfinding are in no way contrary authority. *See, e.g., United States v. Potter*, 895 F.2d 1231, 1238 (9th Cir.1990). That statute requires that a felon, who has been convicted of three prior violent felonies, be imprisoned at least 15 years for possessing a firearm. *See* 18 U.S.C. §§ 922(g)(1), 924(e)(1). Possession of a firearm is an element of the offense that must be proved at trial beyond a reasonable doubt. Although the sentencing judge can determine

the existence of three prior felonies without a jury, the defendant had an opportunity to submit the felonies to a jury at the original trials and either a jury or a judge has found those felonies beyond a reasonable doubt. *See, e.g., United States v. Brewer*, 853 F.2d 1319, 1326 (6th Cir.1988) ("Prior convictions are highly verifiable matters of record which need not be subject to jury inquiry. Because defendant had received the totality of constitutional protections due in the prior proceedings, no additional factfinding is necessary.").

In *Sudduth,* for instance, the court had to interpret a federal statute, 18 U.S.C. § 924(c) very similar to the statute at issue here: "Whoever uses a firearm to commit a felony for which he may be prosecuted in a court of the United States ... shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years." In declaring that this section creates a separate offense despite the fact that is to be found in the sentencing part of Title 18, the Tenth Circuit noted, "[T]he subject matter of the subsection persuades us to hold that it was intended and should be proved as a separate crime." 457 F.2d at 1201. The court also remarked that the issue of gun use "will frequently involve a group of facts or inferences which will be disputed or contested and from which different inferences will be drawn." The court added, "We are of the opinion that these possibilities make the matter properly to be demonstrated to the satisfaction of the jury." *Id.*

Under the panel's reasoning in *Nichols,* Congress would be free to overrule cases such as *Sudduth* and to declare that it never intended the relevant provision to be elements of a crime. Furthermore, in passing new criminal legislation, Congress would be free to declare novel criminal facts to be sentencing factors. By thus giving Congress and state legislators free reign to shift much of criminal adjudication to the sentencing phase, the *Nichols* panel undermines two cornerstones of our criminal justice system: the right to a jury trial and the protection of the reasonable doubt standard. Defendants are granted the full panoply of due process protections at trial, but these protections turn out to be illusory if they are not available to defendants facing the greatest threat to their liberty at sentencing.

## IV

The district court below had no difficulty recognizing the difference between the Montana statute at issue here and the Pennsylvania statute at issue in *McMillan:*

> The difference [between the two statutes] is obvious. Montana's statute operates to alter the maximum penalty for the crime committed, as opposed to simply limiting the sentencing court's discretion. The statute increases the maximum penalties, as otherwise prescribed for all felonies, by ten years.

*Nichols v. McCormick,* 738 F.Supp. 362, 368 (D.Mont.1990).

Unlike the *Nichols* panel, the district court then correctly identified the question presented by this case: "The court must decide whether this statutory scheme comports with the due process requirement, as defined in *In re Winship,* that the prosecution prove beyond a reasonable doubt 'every fact necessary to constitute the crime charged.'" *Id.* The court's answer was resoundingly negative:

> I believe the Due Process Clause, as interpreted by the *In re Winship* court, requires possession of a firearm, under the Montana scheme, to be considered an element of a criminal offense to which proof beyond a reasonable doubt applies.

*Id.* at 370 n. 15. Having stated that the Montana scheme violates the *In re Winship* due process mandate that all elements of a crime be proved beyond a reasonable doubt, the district court nevertheless held that the MCA § 46–18–221 satisfies due process. In so doing, the court relied on an erroneous reading of *McMillan* as sharply limiting *In re Winship.*

Although it also erred in relying upon *McMillan* as controlling authority in upholding the Montana gun enhancement statute, the district court, unlike our *Nichols* panel, was clearly troubled by the constitutional implications of its holding. Indeed, the district court made the following plea to the Supreme Court:

> Any change or clarification of th[e] law must emanate from the Supreme Court. In that regard, Justice Powell expressed his confidence that the Court would, even under the formalistic approach of constitutional adjudication adopted in *Patterson,* 'find some way' to strike down a

formalistically correct yet *egregious* statute.

738 F.Supp. at 370 n. 15 (emphasis added).

Because I am convinced that *McMillan* does not stand for the simplistic proposition that every statute labeling gun use a sentencing factor passes constitutional muster, I had hoped that our court would have responded to the district court's plea, explained that *McMillan* was not controlling authority and invalidated the statute the district court found so "egregious."